Martin, C. J.
 

 The parties were married in 1949 and have two children, Christopher, born in November, 1951, and James, born in December, 1955.
 

 At the time of the marriage neither party had any estate. Plaintiff worked while defendant completed his university education. After he was graduated, defendant worked as a carpenter and builder and later organized a corporation for the building of homes. Plaintiff obtained a real-estate broker’s license and participated in showing homes for sale and selling them.
 

 Late in 1956 plaintiff went to Florida and did not return until March of 1957. In October, 1957, she went to New York with the children for the funeral of her father and while in New York consulted an attorney with a view of obtaining a divorce in that state. Being advised that would be impossible, she returned alone to Wisconsin and commenced this action in January of 1958. At a hearing on temporary alimony and support, plaintiff was ordered to bring the children to Milwaukee and live at the home of the parties.
 

 Defendant had the children for two weeks’ vacation in the summer of 1958. It appeared that the parties had reconciled; neither appeared at the time set for trial; and the action was
 
 *262
 
 dismissed for want of prosecution. Plaintiff argues that the action was dismissed pursuant to a stipulation of the parties, but the record fails to disclose such a stipulation.
 

 The reconciliation attempt apparently having failed, defendant, less than three weeks after the action was dismissed, applied for reinstatement of the case. When the order to show cause was served, plaintiff was in New York and her attorney accepted service, appearing specially on the return date to advise the court that plaintiff considered his services terminated when the action was dismissed and to challenge the jurisdiction of the court on the ground that plaintiff had not been served. The court overruled the special appearance and reinstated the action. It had dismissed the action on its own motion without notice. It could, therefore, reinstate the action without notice, under sec. 269.28, Stats. See
 
 Zrimsek v. American Automobile Ins. Co.
 
 (1959), 8 Wis. (2d) 1, 98 N. W. (2d) 383.
 

 In any event, plaintiff waived her objections to the jurisdiction of the court by her general appearance on the date ultimately set for trial, August 24, 1959. Her attorney stated to the court that plaintiff did not intend to waive any rights she might have to challenge the jurisdiction of the court, but nevertheless proceeded to trial on her complaint. Sec. 262.17 (4), Stats., provides:
 

 “All issues of law raised by an objection specified in sub. (2) [jurisdiction over the person] . . . shall be tried in advance of any issue going to the merits of the case. If after such a hearing on the objection, the court decides that it has jurisdiction, the case may proceed on the merits; if the court decides that it lacks jurisdiction, the defendant shall be given the relief required by such decision. Such decision shall be by order which is appealable. The raising of such objection . . . may be called a special appearance, but the effect of objection, stipulation, or appearance is limited to that specified in sub. (2).”
 

 
 *263
 
 Plaintiff’s second contention is that she did not have her day in court. (It may be noted that the trial lasted eight days and produced over 1,300 pages of testimony.) This argument is based in part on the assertion that she did not have sufficient funds to prepare her case. The record shows that adequate sums were provided by the court for her attorney fees and disbursements and costs on appeal. Plaintiff calls attention to her counsel’s remarks, early in the trial, to the effect that he had no money to subpoena witnesses for the plaintiff or employ psychiatrists to testify in her behalf. The record shows that her attorney stated he needed $50 to subpoena her witnesses and that defendant thereupon paid that amount to him in open court. Plaintiff’s attorney stated that he noted defendant had two psychiatrists present in the courtroom, psychiatrists whom he had also noticed in attendance at the adverse examinations before trial,' and that if it was defendant’s plan to have them testify as to plaintiff’s mental condition, he requested that the court make funds available to plaintiff to engage two psychiatrists to attend the trial and testify on her behalf. The court considered the request untimely, and in the ensuing discussion plaintiff’s counsel attempted to elicit from defendant’s attorney the purpose of the psychiatrists’ presence. Failing that, her attorney stated to the court:
 

 “. . . counsel does not wish to state on the record that he intends to offer these psychiatrists as witnesses. They are here. Dr. Kasak has attended every adverse examination in which I have been in. Dr. Hurley attended one or the other of those.
 

 “So
 
 I’m just alerting the court to the fact that I assume . . . that these people are here to observe Mrs. Vishnevsky and to testify with reference to her testimony or her own mental competency.
 

 “Under those circumstances, having alerted the court,
 
 I will then take the responsibility of engaging two psychia
 
 
 *264
 

 trists to be here commencing this afternoon.
 
 That’s all I can do. But I don’t want it said later on that we went to any unnecessary expense.
 

 “The Court: All right; whatever you do there, that will be up to you; and then, of course, Mr. Vishnevsky will only be chargeable with the reasonableness that might have to be determined later on. . . .”
 

 This excerpt from the transcript-is omitted in plaintiff’s appendix. There is no information as to whether plaintiff engaged psychiatrists or not; nor was any testimony given by psychiatrists in her behalf. In any event, the argument that plaintiff was without sufficient funds to properly try her case is without support.
 

 Other assertions are made by plaintiff that her evidence was “misused,” that witnesses were inadequately questioned by her counsel, that witnesses testified falsely, that adverse examinations were not offered in evidence or used to impeach witnesses, that her evidence was inadequately presented and some of her witnesses were not produced, that certain testimony, given was omitted from the transcript, that witnesses were influenced by defendant’s counsel, and plaintiff’s attorney failed to make proper motions after trial. These assertions are without foundation. The judge to whom the case was assigned for trial is highly competent and permitted great latitude to the plaintiff in offering her proof. In eight days of trial there was a vast amount of repetition in the testimony and plaintiff was given every opportunity to prove her case.
 

 The cruel and inhuman treatment alleged in plaintiff’s complaint is the excessive use of intoxicants by defendant; his refusal to confide in her; use of physical force and violence by defendant upon the plaintiff; defendant’s selfishness; his use of loud and boisterous language and his rough conduct about the home; ridicule of plaintiff by defendant; absence of the defendant from the home without explana
 
 *265
 
 tion; plaintiffs fear of defendant, known to him and used by him to keep her emotionally upset and ill; defendant’s suggestion that plaintiff leave the home; his broken promises to mend his ways; and it is alleged that defendant is not a fit and proper person to have the care and custody of the children.
 

 In defendant’s counterclaim the cruel and inhuman treatment alleged is that plaintiff nagged and belittled the defendant; that she refused to engage in any social life or to cook for defendant or do his laundry; that she refused to have sexual relations with defendant; that she refused to have defendant’s father and sisters visit the home, see or give gifts to the children; that plaintiff stated to defendant and to some of his friends that defendant is a homosexual and had such relations with his father; that plaintiff claimed to defendant and his friends that she is responsible for defendant’s business success; that plaintiff asked defendant to acknowledge in writing, for public record, that he is a homosexual ; and it is alleged that plaintiff is not a proper person to have the care and custody of the children.
 

 In plaintiff’s reply to the counterclaim she denies generally the allegations of cruel and inhuman treatment, except that regarding her statements as to the defendant’s being a homosexual, which statements she alleges to be true.
 

 The trial court found there was no credible evidence upon which it could grant a divorce upon plaintiff’s complaint; that the evidence established defendant’s claims of cruel and inhuman treatment by plaintiff.
 

 Plaintiff contends the trial court’s decision was not based on credible evidence. Her brief contains a lengthy list of separate statements taken from the decision, followed by comments based, in most instances, on testimony given by plaintiff — testimony which the trial court had rejected as incredible.
 

 
 *266
 
 In its decision the trial court treated the evidence thoroughly and in detail. AYe see no reason to go into such detail here. Plaintiff’s charges of defendant’s excessive drinking, physical violence, and perversion were not corroborated in any respect and the trial court properly held that her testimony had little, if any, probative value. The record shows defendant was working in developing his growing business and spent much of his time with business associates, but, as the court observed, such practices were for the best interests of the family in the long run and would not constitute cruel and inhuman treatment under the evidence in the case.
 

 No evidence was introduced to corroborate plaintiff’s charges of defendant’s excessive drinking, which was the primary allegation of the complaint. There are only a few letters from defendant to plaintiff indicating that some of the difficulty between the parties was occasioned by his beer drinking and her disapproval of it. He admitted he had some shortcomings which he was trying to overcome. All of the letters express his love for the plaintiff and his desire to reconcile their differences. Nor was there any corroboration of her testimony as to defendant’s alleged perversions.. Some of the persons whom plaintiff named as either indulging in such relations with defendant or witnessing them testified on the trial, and in no case did such testimony support her charges. The only psychiatric evidence in the record is that of defendant’s witnesses whose opinions were that defendant was a normal man and had no homosexual tendencies.
 

 From our review of the record we must agree with the trial court’s characterization of plaintiff’s testimony as “either untrue, distorted, or exaggerated.” The court said:
 

 “It may be that her tendency to strain the truth beyond the breaking point is attributable to the condition within her testified of by Drs. Kasak and Hurley. Nevertheless, the court must take it as it was developed.”
 

 
 *267
 
 Drs. Kasak and Hurley were the psychiatrists engaged by defendant to attend the adverse examinations and the trial for observation of both parties, particularly with a view to forming an opinion as to the welfare of the children. Dr. Kasak testified:
 

 “My opinion is that Mrs. Veronica Vishnevsky is emotionally ill; that she suffers from what we call technically what appears as a personality trait disturbance, showing paranoid trends. In other words, she exaggerates the common tendency that we all have to blame the environment and others for one’s own difficulties. ... In this instance, the way I observed it, Mrs. Vishnevsky considers herself perfect, nothing wrong; the difficulty lies with the husband, with the people he associates with, not with her. In the accusation of homosexuality, I saw nothing anywhere brought out and proven, but she has an idea that it is fixed in her mind . . . So as I mentioned she is rather severely disorganized, emotionally.”
 

 Dr. Kasak further testified that in his opinion plaintiff’s emotional disorganization would have a bad effect on the children, that they would suffer and have difficulty in school and at home and in adjusting with their playmates. He testified from his observation of the defendant, that he found him to be an average normal man.
 

 In Dr. Hurley’s opinion, plaintiff is “a seriously disturbed woman, from a personality standpoint”—
 

 “. . . she’s very aggressive at times in her conversation, very evasive, and in my opinion entertains considerable hostility which she may not be aware of herself but which she uses to punish other people [such as] her husband, her children.”
 

 In his opinion her effect upon two young boys, aged four and seven, and their development, care, and control, was that:
 

 “. . . these personality problems or expressions that I have described would be detrimental to the welfare, of two
 
 *268
 
 male children being raised by this woman exclusively without help on her part from a psychiatric standpoint. . . . I think she’d dominate them, interfere with their maturing processes. . . . sex would become something very distorted, the interpretations of sex and the presentations of it coming into adolescence and adulthood, I think, would be covered with considerable conflict.”
 

 Dr. Hurley further testified that in his opinion plaintiff has a “paranoid trend,” “is very suspicious of the world around her” and “has a great need to dominate the situation.” He testified that from tests made of the defendant “there is no evidence that would in any way, shape, or fashion indicate homosexual, overt homosexual behaviour on this man’s part.” He stated that the Rorschach test given to defendant is “almost infallible” in disclosing homosexual tendencies.
 

 The trial court concluded plaintiff is not presently a fit and proper person to have the custody of the minor children, that the defendant is a fit and proper person to have the custody and that plaintiff’s claims to the contrary are not supported by the evidence. On the record before us, it is our opinion that the court could not have found otherwise.
 

 As shown by that portion of the record quoted in the forepart of this opinion, plaintiff could have engaged psychiatrists to testify in her own behalf, and her counsel stated he would do so, but there is no such testimony in the record. That given by Drs. Kasak and Hurley was, therefore, the only expert testimony which the trial court had to consider in determining the custody question.
 

 Appellant’s motions in connection with this appeal are denied as being without merit.
 

 By the Court.
 
 — Judgment affirmed.