In the MATTER OF a JOHN DOE PROCEEDING COM-
MENCED BY AFFIDAVIT DATED JULY 25, 2001:

STATE of Wisconsin EX REL. UNNAMED PERSON No.1,
Petitioner,

STATE of Wisconsin EX REL. UNNAMED PERSON No.2,
Petitioner,

STATE of Wisconsin EX REL. UNNAMED PERSON No.3,
Petitioner,

v.

STATE of Wisconsin and the Honorable Sarah B.
O'Brien, presiding, Respondents,

The CAPITAL TIMES COMPANY, Ron McCrea, City
Editor of the Capital Times, Journal Sentinel,
Inc. and Mark Maley, State News Editor for the
Milwaukee Journal Sentinel, Intervenors.

· Supreme Court

*Nos. 01–3220–W, 02–0446–W and 02–0831–W. Oral argument
September 18, 2002.—Decided May 1, 2003.*

2003 WI 30

(Also reported in 660 N.W.2d 260.)

654

For the petitioner, Unnamed Person No. 1, there were briefs by *Franklyn M. Gimbel* and *Gimbel, Reilly, Guerin & Brown,* Milwaukee, and oral argument by *Franklyn M. Gimbel.*

For the petitioner, Unnamed Person No. 2, there were briefs by *Stephen L. Morgan, Suzanne Lee,* and *Murphy & Desmond, S.C.,* Madison, and oral argument by *Stephen L. Morgan.*

For the petitioner, Unnamed Person No. 3, there were briefs by *Lisa C. Goldman, Robert F. Nagel,* and *Law Offices of Robert Nagel,* Madison, and oral argument by *Lisa C. Goldman.*

For the respondent, State of Wisconsin, the cause was argued by *Alan Lee,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

For the respondent, Honorable Sarah B. O'Brien, there was a brief by *Nancy E. Wheeler* and *Knuteson, Powers & Wheeler, S.C.,* Racine, and *Robert E. Hankel* and *Robert E. Hankel, S.C.,* Racine, and oral argument by *Robert E. Hankel.*

For the intervenors there were briefs by *Robert J. Dreps, Katherine Stadler,* and *LaFollette Godfrey & Kahn,* Madison, and oral argument by *Katherine Stadler.*

¶ 1. PER CURIAM. We review certified questions relating to three petitions for supervisory writ filed in connection with a John Doe proceeding pending before the Honorable Sarah B. O'Brien, a Dane County Circuit Court judge. *See In the Matter of a John Doe Proceeding Commenced by Affidavit dated July 25, 2001;* Nos. 01–3220–W, 02–0446–W, 02–0831–W, Certi-

fication Mem. (Wis. Ct. App. July 5, 2002). Three witnesses summoned to testify in the secret John Doe proceeding filed separate petitions for supervisory writ in the court of appeals, each challenging certain actions of the John Doe judge and asking the court of appeals to exercise its supervisory authority with respect to those actions. The court of appeals sealed the records, then certified these matters to this court because of concerns as to whether the court of appeals had jurisdiction to issue a supervisory writ to a judge presiding over a John Doe proceeding. The court of appeals also asked for clarification in regard to the scope of secrecy of an appellate record in such a proceeding. We accepted certification and granted a motion filed by the Journal Sentinel, Inc. and The Capital Times Co. (Newspapers) to intervene with respect to the issue of the scope of secrecy of an appellate record in a John Doe proceeding.

¶ 2. We now conclude that the court of appeals has jurisdiction to issue a supervisory writ to a John Doe judge. We conclude further that a John Doe judge has the authority to disqualify counsel for a witness in a John Doe proceeding but must ensure that there is a record of that decision for review. Finally, we hold that when documents are submitted under seal in connection with a petition for supervisory writ that stems from a secret John Doe proceeding, the court of appeals must conduct an in camera review of those documents prior to issuing an order that continues the sealing of such documents, applying the criteria set forth herein.

¶ 3. The underlying John Doe proceeding involves an investigation by Dane County District Attorney Brian Blanchard into possible illegal campaign activity by the partisan legislative caucuses of the Wisconsin Senate and Wisconsin Assembly, as well as various state

661

employees and legislators.[1] The underlying investigation is subject to a secrecy order entered by the John Doe judge on July 27, 2001, as amended by order dated August 17, 2001 and order dated March 6, 2003.

¶ 4. The petitioners are three separate individuals who were subpoenaed to testify in the underlying John Doe proceeding. After these writs were filed in the court of appeals, the court of appeals sua sponte ordered all the files in these three matters sealed. As a result of this action, the Newspapers filed a motion to intervene, which, as noted, this court granted when it accepted certification by order dated July 29, 2002.

¶ 5. By virtue of the secret nature of the underlying John Doe proceedings, the record before this court is somewhat sparse. Indeed, because these are writ proceedings commenced in the court of appeals, we do not have access to the record of the underlying John Doe proceeding. The facts presented to this court regarding each of the three petitions are as follows:

## UNNAMED PERSON NO. 1

¶ 6. Unnamed Person No. 1 is represented by the law firm of Gimbel, Reilly, Guerin & Brown. In the course of the John Doe proceeding, the district attorney filed a motion to disqualify counsel for Unnamed Person No. 1. As grounds, the district attorney alleged that different lawyers at this firm had represented other witnesses subpoenaed to testify in the John Doe proceeding. The lawyers could not obtain the usual waivers and consents from their clients because the secrecy order precluded disclosing the names of their clients.

---

[1] Milwaukee County District Attorney E. Michael McCann has served as the special prosecutor handling the investigation relating to the Senate Democratic Caucus.

¶ 7. Based on information presented by the Dane County District Attorney, the John Doe judge issued a non-final order disqualifying Unnamed Person No. 1's counsel based on the alleged conflict of interest which was deemed not subject to waiver due to the secrecy order. Unnamed Person No. 1 filed a petition for supervisory writ[2] asking the court of appeals to issue a writ precluding the John Doe judge from disqualifying his or her counsel. As part of this petition, Unnamed Person No. 1 challenged the authority of the John Doe judge to disqualify counsel in this manner.

¶ 8. Subsequently, the State moved to dismiss as moot the writ filed by Unnamed Person No. 1, indicating that it has "no current intention" of subpoenaing Unnamed Person No. 1. The petitioner responded that the matter is not moot because the State has not withdrawn its objection to his or her counsel and has "left open the door" to subpoenaing him or her in the future.

¶ 9. On May 30, 2002, before the court of appeals acted on the motion to dismiss, the John Doe judge issued an order vacating her earlier order disqualifying Unnamed Person No. 1's counsel.[3] Notwithstanding this order, Unnamed Person No. 1 maintains that the matter is not moot, emphasizing that the question of a John Doe judge's authority to disqualify counsel should be resolved. The matter was certified to this court with the motion to dismiss still pending before the court of appeals.

---

[2] Initially, Unnamed Person No. 1 filed a motion for leave to appeal a non-final order, which the State moved to dismiss. The court of appeals eventually granted this petitioner's motion to construe the motion as a petition for supervisory writ.

[3] On May 31, 2002, the State moved to supplement the record with this order. We hereby grant that motion.

663

## UNNAMED PERSON NO. 2

¶ 10. The procedural background relevant to Unnamed Person No. 2 is similar to that of Unnamed Person No. 1. The district attorney filed a motion to disqualify counsel for Unnamed Person No. 2, who is represented by the law firm of Murphy & Desmond. Again, the disqualification motion was based on an alleged conflict of interest involving the firm's representation of multiple witnesses in the John Doe proceeding.

¶ 11. As with Unnamed Person No. 1, the John Doe judge issued an order disqualifying counsel based on information presented by the Dane County District Attorney. Unnamed Person No. 2 contends that the information was disclosed to the judge in a private session that excluded both the petitioner and the petitioner's counsel. Accordingly, Unnamed Person No. 2 filed a petition for supervisory writ[4] asking the court of appeals to issue a writ precluding the John Doe judge from disqualifying his or her counsel.

¶ 12. On May 2, 2002, the State moved to dismiss Unnamed Person No. 2's writ as moot, indicating that it has "no current intention" of subpoenaing this petitioner. On May 30, 2002, the John Doe judge issued an order vacating the order disqualifying counsel.[5] Unnamed Person No. 2 did not oppose the motion to dismiss but the matter was certified to this court before the court of appeals ruled on the motion. Accordingly,

---

[4] Petitioner No. 2 filed a dual motion for leave to appeal a non-final order as well as a petition for supervisory writ. Petitioner No. 2 later amended the filing to clarify that a petition for supervisory writ was sought.

[5] The State also filed a motion to supplement the record with this order. We hereby grant the motion.

the State's motion to dismiss Unnamed Person No. 2's petition for supervisory writ is still pending.

## UNNAMED PERSON NO. 3

¶ 13. Unnamed Person No. 3 filed a petition for supervisory writ alleging different facts. Unnamed Person No. 3, a former employee of the Assembly Democratic Caucus, was subpoenaed to testify in connection with the underlying John Doe proceeding. Unnamed Person No. 3 appeared at the John Doe proceeding on March 13, 2002 and exercised his or her Fifth Amendment rights with respect to several questions. The day before he or she was ordered to appear again, on March 25, 2002, Unnamed Person No. 3 filed a petition for supervisory writ, a motion seeking relief from the subpoena, and a stay of the entire John Doe proceeding. The request for a stay was denied. Subsequently, Unnamed Person No. 3 was granted immunity in open court, testified and was released from the subpoena.

¶ 14. Unnamed Person No. 3's petition for a writ involved the claim that Dane County District Attorney Brian Blanchard had an impermissible conflict of interest, such that he should not have remained involved in the John Doe investigation generally, or in this petitioner's subpoena or questioning, specifically. Unnamed Person No. 3 claims further that the John Doe judge misused her discretion by failing to exclude District Attorney Blanchard because of this alleged conflict. This petitioner asserts that the entire John Doe proceeding should be halted on the grounds that it is impermissibly tainted by District Attorney Blanchard's involvement.

¶ 15. As evidence of the alleged conflict of interest, Unnamed Person No. 3 references a press release District Attorney Blanchard issued on June 7, 2001 in

which District Attorney Blanchard disclosed that he had received certain limited assistance from an individual at the Senate Democratic Caucus early in his own campaign. In that press release, he stated that "[t]o avoid the appearance of a conflict of interest, today I am naming Milwaukee County District Attorney E. Michael McCann as special prosecutor to handle investigation of, and any prosecution decisions relating to," the Senate Democratic Caucus.

¶ 16. The court of appeals denied Unnamed Person No. 3's motion to stay the entire John Doe proceeding. Unnamed Person No. 3 later renewed that motion and the court of appeals again denied it.[6] The court also directed the parties to brief the jurisdictional issue we will address herein.[7]

¶ 17. While Unnamed Person No. 3's petition was pending before this court, the John Doe judge, on September 6, 2002, granted District Attorney Blanchard's request for an investigation into his alleged conflict of interest. A hearing, which was open to the public, was conducted on September 17, 2002, one day before the oral argument in this case. On September 18, 2002, a few hours after the oral argument in this matter concluded, the John Doe judge issued an order finding that there was no impermissible conflict of interest involving District Attorney Blanchard.

¶ 18. The first question we consider is whether the three respective petitions for supervisory writ are

---

[6] Unnamed Person No. 3 renewed this motion at oral argument. We deny the motion to stay the entire John Doe proceeding.

[7] The court also asked Unnamed Person No. 1 to brief the question of jurisdiction.

moot. It is well settled that a case is moot when a determination is sought on a matter which, when rendered, cannot have any practical legal effect upon an existing controversy. *Stahovic v. Rajchel,* 122 Wis. 2d 370, 374, 363 N.W.2d 243 (1984).

¶ 19. At first blush, it appears these matters may well be moot. The bases for the requests for supervisory writ from Unnamed Persons No. 1 and No. 2 stem from the John Doe judge's orders disqualifying their counsel. Each of these orders was subsequently vacated. The basis for Unnamed Person No. 3's request for a supervisory writ stems from his or her allegations regarding District Attorney Blanchard, which have now been addressed in the John Doe proceeding. Moreover, Unnamed Person No. 3 has been released from his or her subpoena. However, even if an issue is moot, this court may address the issue if: (1) the issue is of great public importance; (2) the situation occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) the issue is likely to arise again and a decision of the court would alleviate uncertainty; or (4) the issue will likely be repeated, but evades appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties. *State ex rel. Hensley v. Endicott,* 2001 WI 105, ¶ 5, 245 Wis. 2d 607, 629 N.W.2d 686.

¶ 20. Regardless of whether these matters are moot, we conclude that they present issues that are likely to be repeated but may evade review. We believe that the issues are of great public importance, and that a definitive decision from this court would alleviate uncertainty and provide guidance to the lower courts. Accordingly, we will address the certified question

whether the court of appeals has jurisdiction to issue a supervisory writ to a judge presiding over a John Doe proceeding.[8] We will also consider whether a John Doe judge has the authority to disqualify counsel for a witness in a John Doe proceeding. Finally, we will address the scope of secrecy of an appellate record in a petition stemming from a secret John Doe proceeding.

¶ 21. The question whether the court of appeals has the authority to issue a supervisory writ over the actions of a judge in a John Doe proceeding arises because of the unusual nature of John Doe proceedings. The John Doe proceeding is an institution sanctioned by long usage and general recognition in this state. *State v. Washington,* 83 Wis. 2d 808, 814 n.2, 266 N.W.2d 597 (1978).[9]

---

[8] In certifying this question, the court of appeals candidly acknowledges that it has been inconsistent in its treatment of this issue in unpublished orders. *See, e.g., State ex rel. L'Minggio v. Circuit Court,* No. 99–2689–W (Wis. Ct. App. Nov. 9, 1999) (concluding court of appeals has no jurisdiction); *State ex rel. Pierce v. Circuit Court,* No. 98–3029–W (Wis. Ct. App. Apr. 22, 1999) (no jurisdiction); *State ex rel. Lee v. Circuit Court,* No. 01–2440–W (Wis. Ct. App. Nov. 15, 2001) (not addressing jurisdiction); *State ex rel. Mentek v. Circuit Court,* No. 01–2434–W (Wis. Ct. App. Nov. 9, 2001) (not addressing jurisdiction).

[9] The history of John Doe proceedings in this state, which date back to at least 1889, and the development of the John Doe statute are explained in *State v. Washington,* 83 Wis. 2d 808, 266 N.W.2d 597 (1978).

The "John Doe" statute, Wis. Stat. § 968.26 (1999–2000), provides:

> If a person complains to a judge that he or she has reason to believe that a crime has been committed within his or her jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him or her and may, and at the request of the district

668

■

¶ 22. A John Doe proceeding is intended as an independent,. investigatory tool used to ascertain whether a crime has been committed and if so, by whom. *State ex rel. Reimann v. Cir. Ct.,* 214 Wis. 2d 605, 621, 571 N.W.2d 385 (1997) (citations omitted). It is "designed to protect innocent citizens from frivolous and groundless prosecutions." *Id.*

■

¶ 23. Typically, when a circuit court judge renders a decision in a court of record, that decision may be appealed directly to the court of appeals pursuant to Wis. Stat. § 808.03. By contrast, a John Doe proceeding is commenced by a judge, who acts as the tribunal. *See State v. Noble,* 2002 WI 64, 253 Wis. 2d 206, 646 N.W.2d

attorney shall, subpoena and examine other witnesses to ascertain whether a crime has been committed and by whom committed. The extent to which the judge may proceed in the examination is within the judge's discretion. The examination may be adjourned and may be secret. Any witness examined under this section may have counsel present at the examination but the counsel shall not be allowed to examine his or her client, cross-examine other witnesses or argue before the judge. If it appears probable from the testimony given that a crime has been committed and who committed it, the complaint may be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused. Subject to s. 971.23, if the proceeding is secret, the record of the proceeding and the testimony taken shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the preliminary hearing or the trial of the accused and then only to the extent that it is so used. A court, on the motion of a district attorney, may compel a person to testify or produce evidence under s. 972.08 (1). The person is immune from prosecution as provided in s. 972.08 (1), subject to the restrictions under s. 972.085.

All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

38. Therefore, an order issued by a judge in a John Doe proceeding is not a judgment or order of a circuit court. *Washington,* 83 Wis. 2d at 814 n.2; *see also* Wis. Stat. § 967.02(6) (defining "judge") and § 967.02(7) (defining "court"). Thus, it is well settled that a John Doe judge's actions are not directly appealable to the court of appeals because an order issued by a John Doe judge is not an order of a "circuit court" or a "court of record." *See* Wis. Stat. § 808.01 (defining "[a]ppeal"); Wis. Stat. § 808.03 ("[a]ppeals to the court of appeals"); *see also State ex rel. Jackson v. Coffey,* 18 Wis. 2d 529, 118 N.W.2d 939 (1963).

¶ 24. With that background, we consider the nature and scope of the court of appeals' jurisdiction to evaluate whether the court of appeals has jurisdiction to issue a supervisory writ over the actions of a John Doe judge.

¶ 25. The nature and scope of the court of appeals' appellate, supervisory, and original jurisdiction are set forth in the constitution and the statutes. Wisconsin Constitution, Article VII, Section 5(3) provides:

> The appeals court shall have such appellate jurisdiction in the district, including jurisdiction to review administrative proceedings, as the legislature may provide by law, but shall have no original jurisdiction other than by prerogative writ. The appeals court may issue all writs necessary in aid of its jurisdiction and shall have supervisory authority over all actions and proceedings in the courts in the district.

*Id.*; *see also* Wis. Stat. § 752.01;[10] *Petition of Heil,* 230 Wis. 428, 284 N.W. 42 (1939).

---

[10] Wisconsin Stat. § 752.01 provides:

(1) The court of appeals has appellate jurisdiction as provided by law.

670

¶ 26. To resolve the question whether the court of appeals has jurisdiction to issue a supervisory writ to a judge presiding over a John Doe proceeding, we must interpret Article VII, Section 5(3), as well as related statutory provisions.

¶ 27. This court interprets provisions of the Wisconsin Constitution de novo. *Polk County v. State Pub. Defender,* 188 Wis. 2d 665, 674, 524 N.W.2d 389 (1994). In interpreting a constitutional provision, the court turns to three sources in determining the provision's meaning: the plain meaning of the words in the context used; the constitutional debates and the practices in existence at the time of the writing of the constitution; and the earliest interpretation of the provision by the legislature as manifested in the first law passed following adoption. *Id.* at 674; *State v. Beno,* 116 Wis. 2d 122, 123–37, 341 N.W.2d 668 (1984).

¶ 28. The interpretation of a statute and its application to a set of facts are also questions of law that we review de novo. *Reyes v. Greatway Ins. Co.,* 227 Wis. 2d 357, 364–65, 597 N.W.2d 687 (1999); *Landis v. Physicians Ins. Co.,* 2001 WI 86, ¶ 13, 245 Wis. 2d 1, 628 N.W.2d 893. If the language of a statutory provision is unambiguous, and clearly sets forth the legislative intent, we do not look beyond the language itself and simply apply the statutory provision to the case at hand. *Landis,* 2001 WI 86, ¶ 14. If, however, the language of a statute is ambiguous, we must look

(2) The court of appeals has original jurisdiction only to issue prerogative writs.

(3) The court of appeals may issue all writs necessary in aid of its jurisdiction.

671

beyond its language and examine such things as its scope, history, context, subject matter, and purpose, to determine the intent of the legislature. *UFE, Inc. v. LIRC,* 201 Wis. 2d 274, 548 N.W.2d 57 (1996); *Landis,* 2001 WI 86, ¶ 15. A statute is ambiguous if reasonable minds could differ as to its meaning. *UFE, Inc.,* 201 Wis. 2d at 283.

¶ 29. Article VII, Section 5(3) might be read narrowly and taken to mean the court of appeals lacks supervisory jurisdiction because the actions of a John Doe judge are not actions of a "court." That is how the State and the dissent would have us construe it. It might also be taken to reflect a broad grant of authority to the court of appeals, which includes the authority to issue a supervisory writ over the actions of a John Doe judge. That is how the petitioners and the John Doe judge would have us construe it. Both constructions are reasonable and we conclude that Article VII, Section 5(3) is ambiguous with respect to whether it grants the court of appeals jurisdiction to issue a supervisory writ over a John Doe proceeding. Therefore, we turn to extrinsic factors, including the history of the constitutional enactment and contemporaneous statutory enactments, to evaluate the relevant constitutional provision.

¶ 30. The history of Article VII, Section 5(3) supports a construction that would imbue the court of appeals with jurisdiction to issue a supervisory writ to a judge presiding over a John Doe proceeding. Our analysis is inextricably intertwined with the reorganization of the Wisconsin court system, enacted in 1977, which created the court of appeals. Prior to the court reform, Wisconsin's court system was comprised of the Wisconsin Supreme Court, circuit courts, county courts and municipal courts. *See* 4 Jay E. Grenig & Nathan Fish-

bach, *Wisconsin Practice, Civil Procedure Forms*, §§ 1.6–1.11 (1999). Before the creation of the court of appeals, actions of a John Doe judge were subject to review by writ proceedings initiated in a circuit court, pursuant to the authority vested in the circuit court by the Wisconsin Constitution. Wis. Const. art. VII, § 8 (1975);[11] *see also State ex rel. Niedziejko v. Coffey,* 22 Wis. 2d 392, 126 N.W.2d 96 (1964); *State ex rel. Kowaleski v. Dist. Ct.,* 254 Wis. 363, 36 N.W.2d 419 (1949).

¶ 31. There was apparently no dispute that a circuit court's appellate authority over "inferior county courts" and other "tribunals" included John Doe proceedings, because a John Doe judge is a judicial tribunal. *See State v. Noble,* 2001 WI App 145, ¶ 22, 246 Wis. 2d 533, 629 N.W.2d 317; *State ex rel. Freemon v. Cannon,* 40 Wis. 2d 489, 493, 162 N.W.2d 32 (1968).

¶ 32. Effective in 1978, Wisconsin's court system was completely overhauled. County courts were abolished and merged into circuit courts; county court jurisdiction and judges were transferred to circuit courts. *See* William A. Bablitch, *Court Reform of 1977: The Wisconsin Supreme Court Ten Years Later,* 72

---

[11] In 1975 the Wisconsin Constitution provided in relevant part:

> The circuit courts shall have original jurisdiction in all matters civil and criminal within this state, not excepted in this constitution, and not hereafter prohibited by law; *and appellate jurisdiction from all inferior courts and tribunals,* and a supervisory control over the same. They shall also have the power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and all other writs necessary to carry into effect their orders, judgments and decrees, and give them a general control over inferior courts and jurisdictions.

Wis. Const. art. VII, § 8 (1975) (emphasis added).

Marq. L. Rev. 1 (1988);[12] 4 Jay E. Grenig & Nathan Fishbach, *Wisconsin Practice* at § 1.9. The four districts of the Wisconsin Court of Appeals were created and were specifically granted the authority set forth in Wisconsin Constitution Article VII, Section 5(3) (1977) *codified at* sections 752.01 and 752.02, Wis. Stats. (1977).

---

[12] The process of amending the Wisconsin Constitution to achieve court reorganization was detailed by Justice Bablitch:

> The reorganization of the judiciary could not be accomplished without amending the Wisconsin Constitution. This required that the proposed amendments be agreed to by each house of the legislature in two consecutive sessions. Following such agreement, the proposed amendments were then submitted to the vote of the people.
>
> . . . .
>
> In April 1977, the proposed amendments were submitted to the people for ratification. The amendments were overwhelmingly adopted by a vote of 455,350 to 229,316. All that remained to be done was the enabling legislation (footnotes omitted).

It is clear that the Wisconsin Legislature, which agreed to the language of the amendments, was directly involved in the process that resulted in these constitutional enactments. It also enacted the enabling legislation.

> The Legislative Council created a special committee on court reorganization to draft enabling legislation for the creation of a court of appeals. Chaired by Senator James Flynn of West Allis, the special committee drafted and introduced Senate Bill 525 which was enacted by the legislature in a special session in November of 1977 as ch. 187, Laws of 1977, and subsequently incorporated into Wisconsin Statutes as ch. 752.

¶ 33. Consistent with this reorganization, the Wisconsin Constitution was amended to delete the reference to circuit courts having appellate jurisdiction of "all inferior courts and tribunals."[13]

¶ 34. Pursuant to the constitutional enactment, most of the appellate function previously exercised by circuit courts was assigned to the newly created court of appeals. It is unclear whether the reorganization was intended to transfer the authority to review John Doe proceedings to the court of appeals, because the constitutional enactment failed to include the word "tribunal" in the constitutional grant of jurisdiction to the court of appeals. The legislative history provides no evidence that the constitutional enactment was intended to deviate from the long-standing practice of permitting review of the decisions of a John Doe tribunal. *See* Dan Fernbach, *Working Document # 2: Jurisdiction of the Intermediate Court of Appeals* (Wisconsin Legislative Counsel Reports; Special Committee on Court Reorganization) (May 16, 1977); Robert J. Martineau & Richard R. Malmgren, *Wisconsin Appellate Practice,* § 2901 (1978) ("The Court of Appeals can exercise control over any action or proceeding in any court or before any administrative agency or public official or body to protect the legal rights of the petitioner."). Indeed, traditionally, we have assumed that there must be some

---

[13] With respect to circuit court jurisdiction, the Wisconsin Constitution now provides in relevant part: "Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and *such appellate jurisdiction in the circuit as the legislature may prescribe by law.* The circuit court may issue all writs necessary *in aid of its jurisdiction.*" Wis. Const. art. VII, § 8 (1977) (emphasis added).

mechanism for review of the actions of a John Doe judge. *See, e.g., Washington,* 83 Wis. 2d at 828 ("We believe that witnesses and persons accused can be protected by appellate court review of John Doe proceedings and of the court orders which are an outgrowth of those proceedings."); *Niedziejko,* 22 Wis. 2d at 401 (if the facts show the judge has extended the proceeding in duration or scope beyond the reasonable intendment of the statute or has otherwise improperly conducted the proceedings, he or she can be restrained by writ of prohibition for abuse of discretion); 51 Op. Att'y Gen. 87 (Sept. 1, 1987) ("The acts of the judge in conducting the John Doe are judicial or quasi-judicial in nature and subject to a writ of prohibition."). Had the legislature intended to curtail an individual's right to seek review of an order issued in a John Doe proceeding, it could have expressly said so. The question, then, is which court appropriately reviews the actions of a judge in a John Doe proceeding. To resolve this question, it is appropriate to consider the context in which the constitutional enactment creating the court of appeals arose.

¶ 35. As noted previously, the legislature was extensively involved in the creation of the court of appeals, including the scope of its jurisdiction. In April 1977, the voters of Wisconsin endorsed by over a two-thirds margin the establishment of a court of appeals and in that referendum, authorized the legislature to decide the jurisdiction of the court of appeals, as well as the number of judges, the districts in which the judges would be elected, and the districts for venue purposes. *See In Re Court of Appeals of Wisconsin,* 82 Wis. 2d 369, 263 N.W.2d 149 (1978). The legislature was directed to have the court of appeals operational by August 1, 1978. *Id.*

¶ 36. To achieve that directive, the Legislative Council appointed a special committee on court reorganization. *Id.* This committee was directed to prepare the legislation setting up the court of appeals. The legislature considered the proposals of the special committee at a special session in November 1977, and Chapter 187 of the Laws of 1977 was enacted establishing the court of appeals. *Id.* at 370.

¶ 37. In light of the legislature's involvement with the court reform approved in 1977 and effective in 1978, we also consider contemporaneous statutory enactments, which clarify the grant of jurisdiction made to the court of appeals by Article VII, Section 5(3) of the Wisconsin Constitution. Wisconsin Stat. § 808.03(2) was enacted by the legislature in 1977, the same year as the constitutional amendment, and provides an instructive analogy. It sets forth the procedure for seeking discretionary appellate review of nonfinal orders in the court of appeals.[14] This section gives the court of appeals jurisdiction to take up a matter if doing so will, in its exercise of discretion, clarify further proceedings in the litigation. The legislative council's comments

---

[14] Wisconsin Stat. 808.03(2) is entitled "Appeals By Permission" and provides that:

A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:

(a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;

(b) Protect the petitioner from substantial or irreparable injury; or

(c) Clarify an issue of general importance in the administration of justice.

indicate this provision was intended to supply standards for determining when the court of appeals should grant permission for review of an intermediate judgment or a non-final order. While this provision obviously deals with a different aspect of the court of appeals' jurisdiction than is before us today, it demonstrates that certain statutes may shed light on the scope of the constitutional grant of jurisdiction to the court of appeals. It also shows that the legislature wanted to be sure that the court of appeals had clear authority to clarify issues when necessary for the administration of justice.

¶ 38. Wisconsin Stat. § (Rule) 809.51(1), which was adopted effective July 1, 1978 to coincide with the beginning of the court of appeals, supports our conclusion that the court of appeals has jurisdiction to consider whether to exercise its supervisory jurisdiction over a John Doe judge. It provides:

> A person may request the court to exercise its supervisory jurisdiction or its original jurisdiction to issue a prerogative writ over a court and the presiding judge, *or other person or body,* by filing a petition and supporting memorandum.

Wis. Stat. § (Rule) 809.51(1) (emphasis added). The State correctly asserts that "[t]he statute, of course, cannot expand the court of appeals' jurisdiction beyond that which Article VII, Section 5(3) provides." State's Br. at 8. However, this provision was enacted contemporaneous with the reorganization of the court system and we are of the opinion it reflects the court of appeals' broad authority to issue a supervisory writ over an "other person or body" over which it has supervisory jurisdiction, including a John Doe judge. *Cf. Reise v. Morlen,* 2002 WI App 83, 251 Wis. 2d 472, 642 N.W.2d

678

568 ("the reference to 'court' or 'other person or body' in Rule 809.51(1) includes a Register in Probate"); *State ex rel. S.M.O. v. Resheske,* 110 Wis. 2d 447, 329 N.W.2d 275 (Ct. App. 1982) (court has supervisory authority over the clerk of the circuit court).

¶ 39. Our decision in *State ex rel. Reimann v. Circuit Court for Dane County,* 214 Wis. 2d 605, 625–26, 571 N.W.2d 385 (1997), is consistent with the conclusion we reach today. In *Reimann,* this court touched, albeit peripherally, on the question of the court of appeals' jurisdiction to issue writs over John Doe proceedings. Reimann had filed a petition in circuit court seeking a John Doe proceeding pursuant to Wis. Stat. § 968.26 (1995–96), but the petition was denied without a hearing. Reimann petitioned the court of appeals for a supervisory writ pursuant to Wis. Stat. § (Rule) 809.51 (1995–96). The court of appeals granted the writ and ordered the John Doe judge to examine Reimann and his witnesses. *Id.* at 612–13. This court accepted the petition for review on the issue of whether Wis. Stat. § 968.26 (1995–96) requires a judge to examine a complainant under oath. Ultimately, this court modified the writ, but implicitly approved the use of a supervisory writ issued by the court of appeals under § 809.51 (1995–96) in its review of the actions of a John Doe judge.

¶ 40. We recognize the court of appeals' concern, as expressed in its certification memorandum:

> If the statement in *Reimann* accurately reflects the Supreme Court's view that [the court of appeals] has supervisory jurisdiction to review John Doe proceedings, we would be left with the incongruity that we could review rulings by a John Doe judge by writ but could not review final determinations in John Doe proceedings by appeal. Such a construction would also

679

> appear to give different meanings to the term "court" as
> used in Wis. Stat. §§ 808.03 and 752.02.

Certification Mem. at 5–6.

¶ 41. It is true that a John Doe judge's decisions made in the context of a John Doe proceeding are not subject to direct appeal pursuant to Wis. Stat. § 808.03, because the decisions of a John Doe proceeding are not the decisions of a "circuit court" or a "court of record." However, we have concluded that such actions are subject to review pursuant to a petition for supervisory writ. With respect to the court of appeals' concern that the final determination in a John Doe proceeding is not subject to direct appeal, we note that all that can issue from a John Doe proceeding is a complaint. The validity of such a complaint will be scrutinized in the circuit court. For example, probable cause to bind over for arraignment and trial may be tested in a preliminary examination in the circuit court. *See State v. Doe,* 78 Wis. 2d 161, 165–66, 254 N.W.2d 210 (1977). In this sense, then, the final determination of a John Doe proceeding is subject to review.

¶ 42. *State ex rel. Swan v. Elections Board,* 133 Wis. 2d 87, 394 N.W.2d 732 (1986), does not require a contrary result, even though the dissent maintains that it does. In *Swan,* the Elections Board, relying on Wis. Stat. § 8.30(4), refused to certify Monroe Swan as a candidate entitled to have his name placed on a ballot for state senator in a 1984 primary election, because Swan had two federal felony convictions. Swan commenced an original action in the court of appeals, seeking a writ of mandamus to compel the Elections Board to place his name on the ballot. The court of appeals declared Wis. Stat. § 8.30(4) unconstitutional

and granted the writ. On the filing of a petition for review, this court raised, sua sponte, the issue whether the court of appeals had jurisdiction of such an original action raising questions publici juris. We ultimately vacated the court of appeals' decision, concluding that the court of appeals was not empowered to issue a prerogative writ in that case, on the grounds that it had no original jurisdiction to issue the prerogative writ, and there was no basis for the court of appeals to exercise supervisory or appellate powers over the Elections Board.

¶ 43. We view *Swan* as a procedurally unusual and highly fact-specific case. In her dissent from that decision, now Chief Justice Abrahamson predicted this decision would "spawn numerous cases exploring the boundaries of the court of appeals' 'supervisory jurisdiction,' a concept less easily defined and more open textured than 'appellate jurisdiction.' " *Id.* at 106 (Abrahamson, J., dissenting). As the matters presently before the court attest, this prediction has come to pass.

¶ 44. However, we are of the opinion that *Swan* is procedurally distinguishable. First, it involved an administrative agency. The dissent calls this a "distinction without a difference" but we disagree. In *Swan,* when the writ petition was filed in the court of appeals, it was clear that the circuit court had jurisdiction to review the decision of the Elections Board with a right of appeal from a final judgment of the circuit court to the court of appeals pursuant to Wis. Stat. §§ 227.16(1)(a) and 227.21. Consequently, the *Swan* court's holding was based in part on the fact that it perceived no "jurisdictional underpinning" for the court of appeals' authority to issue the writ. By contrast, here we have concluded that the constitutional drafters involved, as well as the Wisconsin Legislature, intended to give the court of

appeals supervisory jurisdiction over the actions of a judge in a John Doe proceeding, so there is a jurisdictional basis for the court of appeals to issue the supervisory writ.

¶ 45. *Swan* is further distinguishable in that it is not a "John Doe" case. The unusual nature of John Doe proceedings is such that the proceedings are not readily amenable to comparison with different proceedings. It is highly unlikely that the *Swan* court, despite its somewhat expansive discussion on the scope of the court of appeals' jurisdiction, even considered John Doe proceedings when ruling on that case.

¶ 46. In addition, the *Swan* decision relied heavily on the reasoning of *State ex rel. Gilboy v. Circuit Court for Waukesha County,* 119 Wis. 2d 27, 349 N.W.2d 712 (Ct. App. 1984), which we later overruled in *State ex rel. James L.J. v. Circuit Court for Walworth County,* 200 Wis. 2d 496, 546 N.W.2d 460 (1996). In the *State ex rel. James L.J.* case, we held that the court of appeals did have jurisdiction to hear a petition for a supervisory writ relating to a ruling made by a chief judge on a substitution request, even though a judge, rather than a court, made the ruling. *Id.*

¶ 47. We further note that *Swan* relied on the theory that questions publici juris must be brought to the supreme court, *Swan,* 133 Wis. 2d at 93, because the court of appeals is "charged primarily with error correcting in the individual case." *Id.* at 94.

¶ 48. On balance, we conclude that Wisconsin Constitution, Article VII, Section 5(3), read together with the language in Wis. Stat. § 808.03(2) and in Wis. Stat. § (Rule) 809.51(1) including "other person or body," is sufficiently broad in scope to permit the court

682

of appeals to exercise supervisory jurisdiction over the actions of a judge presiding over a John Doe proceeding. Interpreting the constitution to allow for the court of appeals to exercise jurisdiction over the actions of a John Doe judge represents sound practice and is in keeping with the court of appeals' traditional role as an error-correcting court. *See State ex rel. James L.J. v. Cir. Ct. for Walworth County,* 200 Wis. 2d 496, 546 N.W.2d 460 (1996).

¶ 49. We emphasize, however, that writs stemming from John Doe proceedings should not become a vehicle for delaying a John Doe proceeding. Pursuant to Wis. Stat. (Rule) § 809.51(2), the court of appeals enjoys the discretion to deny a petition for supervisory writ ex parte, when warranted.

¶ 50. We now turn to certain procedural questions raised by these petitions. The first is whether a John Doe judge has the authority to disqualify counsel in a John Doe proceeding, as occurred in the matters of Unnamed Persons No. 1 and No. 2. Resolution of this issue has significant implications for the rights of witnesses in a John Doe proceeding.

¶ 51. In John Doe proceedings conducted in Wisconsin, witnesses and persons under investigation have substantial rights and due process protections. *State v. Doe,* 78 Wis. 2d 161, 165, 254 N.W.2d 210 (1977). One of those rights is to have counsel present during questioning. The John Doe statute does provide that "counsel shall not be allowed to examine his or her client, cross-examine other witnesses or argue before the judge." Wis. Stat. § 968.26. We construe this limitation to apply to counsel, such that counsel is not entitled to advocate on his or her client's behalf as typically occurs in the context of a circuit court proceeding. While the

683

John Doe judge may impose limits on counsel's right of advocacy, this provision should not be interpreted to preclude the John Doe judge from entertaining argument when necessary to ensure procedural fairness. This is consistent with the practice of many John Doe tribunals. *See, e.g., Washington,* 83 Wis. 2d at 818–19 (noting that judge permitted argument); *Noble,* 253 Wis. 2d at 215.

¶ 52. This conclusion is consistent with the broad powers granted the John Doe judge. It is well settled that a John Doe judge has broad discretion to determine the nature and extent of John Doe proceedings. *Niedziejko,* 22 Wis. 2d 392. The judge also has final responsibility for the proper conduct of John Doe proceedings. *State v. O'Connor,* 77 Wis. 2d 261, 284, 252 N.W.2d 671 (1977) (stating that it is the John Doe judge's obligation "to ensure that the considerable powers at his or her disposal are at all times exercised with due regard for the rights of witnesses, the public, and those whose activities may be subject to investigation").

¶ 53. To that end, Wis. Stat. § 968.26 grants the John Doe judge the extraordinary authority to convene John Doe proceedings, to order the proceedings secret, and to issue a complaint or complaints as a result of the John Doe proceeding. *See Reimann,* 214 Wis. 2d 605.

¶ 54. A John Doe judge is also entitled to exercise the authority inherent in his or her judicial office. *See In re Wis. Family Counseling Serv. v. State ,* 95 Wis. 2d 670, 675–76, 291 N.W.2d 631 (Ct. App. 1980). As such, a John Doe judge has authority to issue subpoenas, examine witnesses, adjourn the proceedings, take possession of subpoenaed records, adjudicate probable cause, and issue and seal warrants. *See, e.g., State v.*

*Cummings,* 199 Wis. 2d 721, 735–36, 546 N.W.2d 406 (1996) (holding John Doe judge has authority to seal search warrant despite lack of express statutory authority); *State v. Kielisch,* 123 Wis. 2d 125, 131, 365 N.W.2d 904 (Ct. App. 1985).[15]

, ■

¶ 55. We have presumed that the grant of jurisdiction to John Doe judges "includes those powers necessary to fulfill the jurisdictional mandate." *See Cummings,* 199 Wis. 2d at 736. It is the John Doe judge's responsibility to ensure procedural fairness, and matters such as attorney conflicts of interest may indeed interfere with procedural fairness, particularly in a matter where a conflict may not be subject to waiver because of a secrecy order. The commentary to SCR 20:1.7, regarding attorney conflicts of interest, is cited by the dissent to support the assertion that a John Doe judge lacks the authority to disqualify counsel. However, the same commentary observes that opposing counsel may raise the question of a conflict "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice . . . ." Comment to SCR 20:1.7 (2002). Accordingly, we conclude that a John Doe judge must have the authority to disqualify counsel, and may permit argument by counsel when

---

[15] A John Doe judge does not, however, enjoy the statutory powers of a court. *See State ex rel. Jackson v. Coffey ,* 18 Wis. 2d 529, 536, 118 N.W.2d 939 (1963). In the examples cited by the dissent involving contempt proceedings, immunity grants, and the like, a "court" must decide the motions. The relevant statutes governing immunity and contempt explicitly provide that those particular decisions must be made by a "court." *See, e.g.,* Wis. Stat. § 972.08 (indicating person may be compelled to testify "by order of the court"); Wis. Stat. § 785.05 (referring to contempt "of court").

necessary to ensure procedural fairness. *State v. Washington,* 83 Wis. 2d 808, 823, 266 N.W.2d 597 (1978) (citing *State v. O'Connor,* 77 Wis. 2d 261, 284, 252 N.W.2d 671 (1977)). *See also State v. Doe,* 78 Wis. 2d 161, 165, 254 N.W.2d 210 (1977). Denying a John Doe judge the ability to disqualify counsel would seriously reduce the ability of the John Doe judge to carry out his or her responsibilities with respect to the proper conduct of John Doe proceedings.

¶ 56. Were we required, however, to review the John Doe judge's exercise of discretion in these matters, we would be greatly hampered by the absence of any record for our review. In the briefs filed in this court, the John Doe judge explained at length her reasons for disqualifying counsel for Unnamed Persons No. 1 and No. 2. But, the fact remains that there are simply no findings, conclusions or reasons on the record, other than the briefs, for this court to review to determine whether the judge did, in fact, properly exercise her discretion here.

¶ 57. We, therefore, remind John Doe judges to be mindful that, when rendering judicial decisions in the context of a John Doe proceeding, they must create a record for possible review. *See* SCR 72.01(26) (governing retention of the record created in a John Doe proceeding). We appreciate that the John Doe judge could conclude that the terms of the secrecy order may preclude a disclosure of the factual basis for the disqualification orders to the petitioners and their counsel. However, our system of justice demands that there be some basis set forth to facilitate review. If necessary to preserve the integrity of a secret John Doe proceeding, the details concerning the grant or denial of such a motion need not be recited in open court. *State ex rel.*

*Newspapers, Inc. v. Cir. Ct. for Milwaukee County,* 65 Wis. 2d 66, 72, 221 N.W.2d 894 (1974); *State ex rel. Jackson v. Coffey,* 18 Wis. 2d 529, 536, 118 N.W.2d 939 (1963). The facts comprising the basis for the disqualification order may be sealed and, in the event of further review, submitted directly to the reviewing court for in camera review. Such a procedure protects the integrity of the underlying John Doe proceeding, and also protects the excluded parties from arbitrary or capricious decisions.

¶ 58. It so happens that the John Doe judge vacated the disqualification orders that were the subject of the petitions filed in the court of appeals. Therefore, we need not consider whether the judge erroneously exercised her discretion in disqualifying counsel for Unnamed Persons No. 1 and No. 2 in these matters.[16]

¶ 59. Finally, we address whether the court of appeals may, sua sponte, seal the appellate record in an action involving a petition for supervisory writ stemming from a secret John Doe proceeding. It is clear that a John Doe judge has authority to designate a John Doe proceeding as secret and to issue appropriate orders to

---

[16] These proceedings also raise a question about the authority of a John Doe judge to issue orders regarding an issue while a writ proceeding involving the same issue is pending in an appellate court. As a general rule, in the context of a direct appeal pursuant to Wis. Stat. § 808.03, service of a notice of appeal strips the circuit court of all jurisdiction regarding the case, except where there is a specific grant of authority permitting the trial court to act. Wis. Stat. § 808.075; *In re Marriage of Hengel v. Hengel,* 120 Wis. 2d 522, 355 N.W.2d 846 (Ct. App. 1984) (finding since no specific exception was applicable, trial court judge had no power to act on attorneys fees after notice of appeal was filed). *See also Seyfert v. Seyfert,* 201 Wis. 223, 226, 229 N.W. 636 (1930) (recognizing the general rule).

that effect. The John Doe statute, Wis. Stat. § 968.26, provides in relevant part: "[T]he record of the proceeding and the testimony taken shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the preliminary hearing or the trial of the accused and then only to the extent that it is so used."

¶ 60. Indeed, we have recognized that it is sometimes desirable for John Doe proceedings to be carried out in secrecy. *See, e.g., Newspapers,* 65 Wis. 2d at 72; *see also Jackson,* 18 Wis. 2d 529 (upholding secrecy orders against constitutional challenge). There are a number of reasons why secrecy may be vital to the very effectiveness of a John Doe proceeding. These include:

(1) keeping knowledge from an unarrested defendant which could encourage escape;

(2) preventing the defendant from collecting perjured testimony for the trial;

(3) preventing those interested in thwarting the inquiry from tampering with prosecutive testimony or secreting evidence;

(4) rendering witnesses more free in their disclosures; and

(5) preventing testimony which may be mistaken or untrue or irrelevant from becoming public.

*State v. Cummings,* 199 Wis. 2d 721, 736, 546 N.W.2d 406 (1996) (citing *State v. O'Connor,* 77 Wis. 2d 261, 279, 252 N.W.2d 671 (1977)).

¶ 61. The precise scope of a permissible secrecy order will, of course, vary from proceeding to proceeding. However, as we observed in *O'Connor,* "[s]ecrecy of

John Doe proceedings and the records thereof is not maintained for its own sake." *Id.* at 283. The policy underlying secrecy is directed to promoting the effectiveness of the investigation. *Id.* at 286. Therefore, any secrecy order "should be drawn as narrowly as is reasonably commensurate with its purposes." *Id.* An allegation that a secrecy order issued in a John Doe proceeding exceeds the scope of the statutory authority provided in Wis. Stat. § 968.26 is subject to review. *See, e.g., Jackson,* 18 Wis. 2d 529.

¶ 62. Typically, a permissible secrecy order issued in a John Doe proceeding may properly encompass information concerning questions asked, answers given, transcripts of the proceedings, exhibits produced during the proceedings, or "other matters observed or heard in the secret session at a John Doe Proceeding." *See O'Connor,* 77 Wis. 2d at 279; *Jackson,* 18 Wis. 2d at 545–47; *see also State ex rel. Kowaleski,* 254 Wis. at 370–71 (holding that a John Doe secrecy order exists, in part, to protect the witnesses).

¶ 63. As such, a document that is not used as an actual exhibit or entered into the record, but is used to question a witness, may be included within the scope of the secrecy order as a "matter observed or heard." Similarly, if a witness noticed that the prosecutor had documents in his or her possession, but those documents were not used to question the witness, the witness would still be precluded from telling anyone

that he or she had observed that the prosecutor had those records because those documents would constitute a "matter observed."[17]

¶ 64. Although several of the parties intimated that the secrecy order in the underlying John Doe proceeding was overbroad in its application, the question formally presented for our review is whether the court of appeals has authority to seal the record when a petition for supervisory writ is filed that derives from a secret John Doe proceeding. Wisconsin statutes and case law do not specifically address this issue.

¶ 65. The Newspapers contend that the court of appeals had no authority to seal the record in these cases without making appropriate public findings. They emphasize that all records and proceedings are presumed public, and assert that they may be closed only when the court determines, after hearing and the making of explicit findings, that overwhelming public values connected with the administration of justice will be subverted by making them public.

¶ 66. We agree that the public records law, Wis. Stat. § 19.35, is applicable to this issue and we reaffirm

---

[17] A John Doe secrecy order would not, however, prohibit a witness from disclosing what he or she knows about an incident or the subject of the inquiry. Similarly, there appears to be no compelling reason for the names of persons subpoenaed as witnesses but who do not appear or testify to be regarded as secret, although neither the John Doe judge nor the prosecutor must provide any list of persons subpoenaed, whether they testify or not because release of that information could prove inimical to the John Doe proceeding. *See In re Wisconsin Family Counseling Servs. v. State,* 95 Wis. 2d 670, 673, 291 N.W.2d 631 (Ct. App. 1980) ("the public's right to know has never been interpreted to provide such unlimited access to public records that the state is unable to effectively prosecute and punish criminals and protect society from criminal ravaging").

the general presumption that all public records shall be open to the public. Wis. Stat. §§ 19.31–19.39. This presumption reflects the basic principle that the people must be informed about the workings of their government, and that openness in government is essential to maintain the strength of our democratic society. *Id.* We have recognized, however, that the policy toward openness, although strong, is not absolute. *Milwaukee Teachers' Educ. Ass'n v. Bd. of Sch. Dirs.*, 227 Wis. 2d 779, 787, 596 N.W.2d 403 (1999). A balance must be struck between the public's right to be informed about the workings of its government and the legitimate need to maintain the secrecy of certain John Doe proceedings.

¶ 67. To that end, the public records law provides that a requester has a right to inspect any record "[e]xcept as otherwise provided by law." Wis. Stat. § 19.35(1). The John Doe statute, Wis. Stat. § 968.26, which authorizes secrecy in John Doe proceedings, is a clear statement of legislative policy and constitutes a specific exception to the public records law. It is critical that when a John Doe judge issues a secrecy order pursuant to Wis. Stat. § 968.26, the judge must be assured that secrecy will be preserved when and if the matter reaches an appellate court. Seeking review in the court of appeals must not become a vehicle to undermine the secrecy or integrity of a John Doe proceeding.

¶ 68. Therefore, on review of a petition for a writ stemming from a secret John Doe proceeding, the court of appeals may seal parts of a record in order to comply with existing secrecy orders issued by the John Doe judge. As noted above, a permissible secrecy order may properly encompass information concerning questions

691

asked, answers given, transcripts of the proceedings, exhibits produced during the proceedings, or "other matters observed or heard in the secret session at a John Doe Proceeding." *See O'Connor,* 77 Wis. 2d at 279. Therefore, this information may be sealed by the appellate court. Indeed, failure to protect this information on review would compromise John Doe investigations and encourage frivolous requests for review by disgruntled individuals seeking to expose the details of the underlying proceeding.

¶ 69. Here, the court of appeals faced a difficult predicament. It was presented with three separate petitions for supervisory writ deriving from a secret John Doe proceeding about which it knew very little, save that there was a secrecy order that was to be strictly observed. The record of the entire underlying John Doe proceeding was not available to the court of appeals, nor, indeed, was it available to this court, to evaluate whether particular documents needed to be sealed to protect the integrity of the underlying John Doe proceeding.

¶ 70. In an effort to avoid such dilemmas in the future, we outline the following procedure to guide counsel and the courts when a petition for supervisory writ that derives from a secret John Doe proceeding is filed in the court of appeals.

¶ 71. The party seeking review of a John Doe judge's decision shall file the petition for supervisory writ in the court of appeals, together with a motion seeking leave to file under seal any portions of the petition or record that fall within the scope of an existing secrecy order, but which the petitioner deems necessary to prosecute his or her petition. The State may respond to that motion. The court of appeals can

then entertain the motion, and conduct an in camera review of the documents proposed to be filed under seal. If the documents appear to fall legitimately within the scope of a permissible secrecy order, the court may grant the motion and the documents will be filed under seal.[18]

¶ 72. Here, the John Doe judge has advised the court that the following documents, which are already part of the appellate record, must remain sealed because each is subject to the secrecy order issued in the underlying John Doe proceeding. Those documents are:

1. Transcript of John Doe proceeding included in Unnamed Person No. 1's Appendix filed in the Court of Appeals on December 3, 2001.

2. John Doe orders dated July 27, 2001 and August 17, 2001, included in Unnamed Person No. 1's Appendix filed in the Court of Appeals on December 3, 2001, and as Exhibit 10 to Unnamed Person No. 3's Memorandum in Support of Petition for Supervisory Writ dated March 25, 2002.

3. John Doe order dated November 21, 2002 included in Unnamed Person No. 1's Appendix filed in the Court of Appeals on December 3, 2001.

4. John Doe order dated January 30, 2002 included as Exhibit 1 to Unnamed Person No. 2's Petition for Leave

---

[18] In certain cases, such as the petitions filed by Unnamed Persons No. 1 and No. 2 relating to the John Doe judge's order disqualifying counsel, the petitioner may not have been granted access to the record of the proceedings he or she seeks to challenge because of a secrecy order. In such cases, the petitioner shall so advise the court and the court of appeals may issue an order directing the clerk of the circuit court to transmit the relevant documents to the court of appeals, under seal, so that the court of appeals can conduct an in camera review of the record relating to the John Doe judge's decision.

to Appeal Non-Final Order, or in the alternative, for review by Supervisory Writ, dated February 13, 2002.

5. Affidavit describing examination which occurred during the John Doe proceeding included as Exhibit 4 to Unnamed Person No. 3's Memorandum in Support of Petition for Supervisory Writ dated March 25, 2002.

6. John Doe Subpoena for Unnamed Person No. 3 included as Exhibit 5 to Unnamed Person No. 3's Memorandum in Support of Petition for Supervisory Writ dated March 25, 2002.

7. John Doe motion dated April 30, 2002 and John Doe order dated April 30, 2002 attached to the State's Motion to Dismiss Petition for Supervisory Writ on Ground of Mootness dated May 2, 2002 in Case No. 01–3220–W (Unnamed Person No. 1).

8. John Doe motion dated April 30, 2002 and John Doe order dated April 30, 2002 attached to the State's Motion to Dismiss Petition for Supervisory Writ on Ground of Mootness dated May 2, 2002 in Case No. 02–0446–W (Unnamed Person No. 2).

9. John Doe order dated May 30, 2002 attached to the State's Motion to Supplement the Record dated May 31, 2002, in Case No. 01–3220–W (Unnamed Person No. 1).

10. John Doe order dated May 30, 2002 attached to the State's Motion to Supplement the Record dated May 31, 2002 in Case No. 02–0446–W (Unnamed Person No. 2).

Br. of Resp't, the Honorable Sarah B. O'Brien, at 7–8.

¶ 73. Because these matters are moot, we decline to remand them to the court of appeals. To the extent any party wishes to pursue a request to open the appellate record in these matters, they are directed to file a motion in the court of appeals. The court of appeals shall then conduct an in camera review of the

appellate records in each of these three matters to determine whether any of the documents that comprise the appellate record should be unsealed. To the extent any of the documents fall within the scope of a permissible secrecy order, they shall remain sealed. The court of appeals shall issue an order to that effect, summarizing the reasons any documents must remain under seal.

¶ 74. We do not reach the merits of the petitions filed by Unnamed Persons No. 1 and No. 2 because the John Doe judge vacated the disqualification orders that were the subject of the petitions filed in the court of appeals. We also decline to reach the merits of the petition filed by Unnamed Person No. 3, regarding the alleged impermissible conflict of interest involving District Attorney Blanchard. We need not resolve the question whether the petitioner had standing to file this petition in light of the fact that he or she had been discharged from the subpoena prior to filing this petition for supervisory writ. We also need not resolve whether this issue presented a justiciable controversy at the time it was filed. Whatever the procedural posture at the time this petition was filed, by the time of the oral argument in this matter, the John Doe judge had initiated an investigation and conducted a public hearing regarding the very issue presented in Unnamed Person No. 3's petition. Questions regarding the order subsequently issued by the John Doe judge on September 18, 2002, after oral argument before this court would be left to the court of appeals to address, if it is asked to exercise its supervisory jurisdiction.[19]

---

[19] Unnamed Person No. 3 has also filed a motion to amend the caption and a motion to compel the production of transcripts. Each of these motions is denied.

¶ 75. In summary, we conclude that the court of appeals has jurisdiction to issue a supervisory writ to a John Doe judge. We conclude further that a John Doe judge has the authority to disqualify counsel for a witness in a John Doe proceeding, but a record for review must be created. Finally, we hold that when documents are submitted under seal in connection with a petition for supervisory writ that stems from a secret John Doe proceeding, the court of appeals shall conduct an in camera review of those documents to ascertain whether they are encompassed by a permissible secrecy order. This in camera review must occur prior to the issuance of an order that continues the sealing of such documents.

*By the Court.*—Questions answered.

¶ 76. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring).* I agree with the result reached by the majority opinion. I write separately to point out that the majority opinion again takes a significant step towards overruling *Swan.*[1] Rather than leaving *Swan* to be overturned in small measures by dubious judicial distinctions, I would embrace the inevitable now by expressly overruling *Swan* and adopting my dissent in *Swan* as the interpretation of the constitutional provision granting jurisdiction to the court of appeals.[2]

¶ 77. DIANE S. SYKES, J. *(dissenting).* The Wisconsin Constitution confers two types of jurisdiction on the court of appeals: appellate, such as the legislature may provide by law; and supervisory, over actions and proceedings in the lower courts. Wis. Const. art.

---

[1] *State ex rel. Swan v. Elections Board,* 133 Wis. 2d 87, 394 N.W.2d 732 (1986).

[2] *Id.* at 97 (Abrahamson, J., dissenting).

VII, § 5(3). The constitution specifically prohibits the court of appeals from exercising any original jurisdiction, except by prerogative writ, and further provides that the court may issue writs that are "necessary in aid of its jurisdiction." *Id.* This court has definitively declared this to mean that original writ proceedings in the court of appeals are limited to those that have an appellate or supervisory jurisdictional basis. *State ex rel. Swan v. Elections Bd.*, 133 Wis. 2d 87, 95–96, 394 N.W.2d 732 (1986); Wis. Const. art. VII, § 5(3).

¶ 78. This matter—an original writ proceeding in the court of appeals seeking review of certain actions of a John Doe judge, not a court—does not fall within the court of appeals' appellate or supervisory jurisdiction under the constitution. Accordingly, the court of appeals cannot entertain it as it is currently procedurally postured.

¶ 79. Although an original writ petition of this type may not be initiated in the court of appeals, it may be brought in the circuit court, because the circuit court has plenary original jurisdiction over all matters civil and criminal under the constitution, including original writ jurisdiction.[1] Wis. Const. art. V, § 8; *see also Petition of Heil*, 230 Wis. 428, 445–46, 284 N.W. 42 (1939). If the matter is publici juris, this court may elect to take original jurisdiction if asked to do so. *Id.* at 445–46.

¶ 80. Finally, although a *court* has the authority to enter an order disqualifying counsel in an appropriate case, a John Doe judge does not. While a John Doe

---

[1] Article VII, Section 8 of the Wisconsin Constitution provides that "the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legislature may prescribe by law. The circuit court may issue all writs necessary in aid of its jurisdiction."

judge must be a judge of a court of record, a John Doe investigation is not a court proceeding and a John Doe judge is not authorized to exercise all the powers of a court. *State v. Washington,* 83 Wis. 2d 808, 822–24, 828–29, 266 N.W.2d 597 (1978); *see also State ex rel. Newspapers, Inc. v. Cir. Ct. for Milwaukee County,* 65 Wis. 2d 66, 72–73, 221 Wis. 2d 894 (1974); Wis. Stat. §§ 968.26, 967.02(6). The John Doe judge presides as a neutral judicial officer over an investigative—not adversarial—proceeding. *Washington,* 83 Wis. 2d at 822–23. The John Doe judge's adjudicative role is limited to determining probable cause. *Id.*

¶ 81. To the extent that circumstances arising in the John Doe investigation require the adjudication of adversarial motions or orders affecting the substantial rights of targets or witnesses—compulsion orders, contempt, privilege claims, and immunity grants—the John Doe statute contemplates, and caselaw has consistently required, that the John Doe judge convene and act as a court. *Id.* at 828–31; *see also State v. Doe,* 78 Wis. 2d 161, 254 N.W.2d 210 (1977); *Newspapers,* 65 Wis. 2d at 72–73; *State ex rel. Jackson v. Coffey,* 18 Wis. 2d 529, 118 N.W.2d 939 (1963); *In re Subpoena Duces Tecum Issued to B.M. v. State,* 113 Wis. 2d 183, 335 N.W.2d 420 (Ct. App. 1983). This sets up conventional and fully constitutional appellate or supervisory review in the court of appeals.

¶ 82. The jurisdictional regime established by the majority opinion is contrary to both our constitution and our caselaw. The majority's conclusion regarding the authority of a John Doe judge to disqualify counsel conflicts with caselaw that has required these sorts of adversarial matters, when they arise in the context of a

John Doe, to be heard and decided by the judge acting as a court rather than a John Doe tribunal. Accordingly, I respectfully dissent.

¶ 83. On the matter of the court of appeals' jurisdiction, the Wisconsin constitution provides:

> The appeals court shall have such *appellate jurisdiction* in the district, including jurisdiction to review administrative proceedings, *as the legislature may provide by law,* but *shall have no original jurisdiction other than by prerogative writ.* The appeals court may issue all writs necessary in aid of its jurisdiction and shall have *supervisory authority over all actions and proceedings in the courts of the district.*

Wis. Const. art. VII, § 5(3) (emphasis added). This constitutional provision plainly contains both a jurisdictional grant and certain jurisdictional restrictions and exclusions. The court of appeals has general appellate jurisdiction as the legislature may provide. The court of appeals also has general supervisory jurisdiction, "over all actions and proceedings in the courts." *Id.* Thus, the scope of the court of appeals' appellate jurisdiction depends upon the language of legislative enactments. The scope of the court of appeals' supervisory jurisdiction is constitutionally limited to actions and proceedings *in courts.*

¶ 84. Original jurisdiction in the court of appeals is strictly limited by the constitution: the court of appeals "shall have no original jurisdiction other than by prerogative writ." *Id.* The constitution authorizes the court of appeals to issue "all writs"—this language clearly includes the prerogative writs mentioned in the sentence immediately prior—if "necessary in aid of its jurisdiction." *Id.* Read as a whole, then, the jurisdiction clause prohibits original jurisdiction in the court of appeals, with the limited exception of prerogative writ

699

original jurisdiction; but prerogative writ original jurisdiction, while available, is limited to that which is necessary in aid of the court of appeals' appellate and supervisory jurisdiction. If there is no basis for the exercise of its appellate or supervisory jurisdiction, the court of appeals cannot entertain an original prerogative writ action.[2]

¶ 85. This was the holding in *Swan,* over 15 years ago, when this court was asked to determine the scope of the court of appeals' jurisdiction under Article VII, Section 5(3). There the question was the court of appeals' jurisdiction to issue a writ of mandamus to an administrative agency, specifically, the Elections Board, in an election matter that was alleged to be publici juris.

¶ 86. The legislature, pursuant to the constitutional directive in Article VII, Section 5(3), has defined the scope of the court of appeals' appellate jurisdiction as encompassing review "by appeal or writ of error . . . of a judgment or order *of a circuit court.*" Wis. Stat. § 808.01(1) (emphasis added). Therefore, direct appellate jurisdiction in the court of appeals is statutorily limited to review of judgments or orders of circuit courts. The court of appeals' supervisory jurisdiction is constitutionally limited to "actions and proceedings in courts." Wis. Const. art. VII, § 5(3). Accordingly, because an administrative agency is neither a "circuit court" for purposes of the court of appeals' appellate jurisdiction nor a "court" for purposes of its supervisory jurisdiction, this court in *Swan* was called upon to decide the scope of the court of appeals' original prerogative writ jurisdiction.

---

[2] Black's Law Dictionary lists certiorari, habeas corpus, mandamus, and prohibition as examples of prerogative writs. *See Black's Law Dictionary* at 1602–03 (7th ed. 1999).

700

¶ 87. Tracing the relevant constitutional language, and consulting a treatise on Wisconsin appellate practice by the drafters of the 1977 court reorganization amendments,[3] the *Swan* court ultimately concluded as follows:

> The foregoing considerations persuade us that the court of appeals is a court of limited, rather than general, writ jurisdiction. The references in the constitution to appellate and supervisory jurisdiction limit and define the power of the court of appeals to issue prerogative writs. The issuance of a prerogative writ by the court of appeals is an exercise of original jurisdiction. However, it is not an exercise of jurisdiction independent of the court's appellate and supervisory powers. The court of appeals has power to decide questions *publici juris* which are brought to it by appeal or which it considers under its supervisory jurisdiction. It does not have the power to issue a prerogative writ based solely on the importance of the question presented without any other jurisdictional underpinning.
>
> . . . .
>
> It should be remembered that a writ brought in any appellate court for the purpose of exercising superintending or supervisory powers is an original action, *i.e.,* a new action designed to affect or control the litigants or the court in respect to a matter then at issue or subject to the action of a lower court. . . .
>
> We conclude that the court of appeals does not have jurisdiction to entertain an original action unrelated to its supervisory or appellate authority over the circuit court. Original jurisdiction in the sense intended by the petition of Monroe Swan for the determination *ab initio*

---

[3] *See* Robert J. Martineau & Richard R. Malmgren, *Wisconsin Appellate Practice* (1978).

701

> of a matter *publici juris* under the constitution lies only in the circuit court or in this court.

*Swan,* 133 Wis. 2d at 95–97.

¶ 88. *Swan* is dispositive of the jurisdictional question now before this court. *Swan* held that Article VII, Section 5(3) precludes the court of appeals from entertaining original writ petitions absent an appropriate basis for the exercise of the court's appellate or supervisory jurisdiction.

¶ 89. The majority attempts to distinguish *Swan* by saying that it involved an administrative agency, not the action of a John Doe judge. Majority op., ¶¶ 42–43. This is a distinction without a difference. As discussed above, the appellate jurisdiction of the court of appeals is statutorily limited to judgments and orders of *circuit courts;* the court's supervisory jurisdiction is constitutionally limited to actions or proceedings in *courts.* An administrative agency is obviously not a court. Similarly, a John Doe judge, while a judge of a court of record, does not act as a court, as the majority must, and does, concede.[4] Majority op., ¶ 23.

¶ 90. This court has repeatedly distinguished between a John Doe judge and a court. "A John Doe judge is not the equivalent of a court, and a John Doe

---

[4] The John Doe statute provides that "[i]f a person complains to *a judge* that he or she has reason to believe that a crime has been committed within his or her jurisdiction, *the judge* shall examine the complainant under oath and any witnesses produced by him or her. . . . " Wis. Stat. § 968.26 (emphasis added). The criminal code contains separate and distinct definitions of "judge" and "court." *See* Wis. Stat. § 967.02(6) and (7) (in Chapters 967–79, "judge" means a "judge of a court of record" and "court" means a "circuit court"); *see also State v. Washington,* 83 Wis. 2d 808, 829 n.15, 266 N.W.2d 597 (1978).

proceeding is not a proceeding in a court of record." *Washington,* 83 Wis. 2d at 828. "[A] John Doe judge does not have the statutory powers of a *court." State v. Cummings,* 199 Wis. 2d 721, 738, 546 N.W.2d 406 (1996) (emphasis in original); *see also Newspapers,* 65 Wis. 2d at 71; *Jackson,* 18 Wis. 2d at 534–35. The court of appeals has echoed this distinction. *State v. Schober,* 167 Wis. 2d 371, 379, 481 N.W.2d 689 (Ct. App. 1992) ("the John Doe tribunal is not acting as a 'court,' but as a 'judge' . . . [and] [t]here is an express distinction between a judge and a court"); *Gavcus v. Maroney,* 127 Wis. 2d 69, 70–71, 377 N.W.2d 200 (Ct. App. 1985) ("[A]n order issued by a judge in a [John Doe] proceeding [is] not an order made by a court.").

¶ 91. I will admit that this distinction between a John Doe judge and a court is somewhat abstract. But it is based on valid concerns about the procedural differences between John Doe investigations and court proceedings. *See* ¶¶ 101–107, *infra.* In any event, it is a distinction that has been consistently maintained in the caselaw. Unless the majority is willing to overrule this unbroken line of authority, it cannot interpret Article VII, Section 5(3) as vesting the court of appeals with original supervisory prerogative writ jurisdiction over the actions of John Doe judges, because the constitution explicitly limits the court of appeals' supervisory jurisdiction to "actions and proceedings in courts." Wis. Const. art. VII, § 5(3).

¶ 92. The majority attempts to get around this inescapable reality by interpreting Article VII, Section 5(3) "together with the language in Wis. Stat. § 808.03(2), and in Wis. Stat. § (Rule) 809.51(1)," which provides that "[a] person may request the court to exercise its supervisory jurisdiction or its original jurisdiction to issue a prerogative writ over a court and the

703

presiding judge, or other person or body." Majority op., ¶ 48; Wis. Stat. § (Rule) 809.51(1). The majority acknowledges the basic principle that a statute cannot expand jurisdiction beyond that which the constitution provides, majority op., ¶ 38, but then proceeds to interpret the statute as doing precisely that. Majority op., ¶ 48 ("[W]e conclude that Wisconsin Constitution, Article VII, Section 5(3), read together with the language in Wis. Stat. § 808.03(2), and in Wis. Stat. § 809.51(1) including 'other person or body' is sufficiently broad in scope to permit the court of appeals to exercise supervisory jurisdiction over the actions of a judge presiding over a John Doe proceeding.").

¶ 93. This approach to constitutional analysis was rejected by no less an authority than Chief Justice John Marshall, for a unanimous United States Supreme Court in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803). Although the case is obviously most revered for its forceful articulation of the judicial review power, the underlying question that precipitated that declaration of principle was jurisdictional: whether the Judiciary Act of 1789 could confer upon the Supreme Court a form of jurisdiction not included in the constitutional jurisdictional grant. *Marbury,* 5 U.S. at 173–74. The Supreme Court, of course, said no. *Id.* at 180.

¶ 94. I am not suggesting that Wis. Stat. § 809.51 is unconstitutional, only that it cannot be read to expand the court of appeals' jurisdiction beyond that which is contained in the constitutional grant. And that is what the majority has done.

¶ 95. The majority claims that its conclusion is consistent with *State ex rel. Reimann v. Circuit Court for Dane County,* 214 Wis. 2d 605, 571 N.W.2d 385 (1997), in which this court affirmed a writ of mandamus granted by the court of appeals stemming from a John

704

Doe judge's denial of a John Doe petition without a hearing. *Reimann,* however, did not address the issue of the court of appeals' supervisory writ jurisdiction under the constitution, but merely assumed without further discussion that Wis. Stat. § 809.51 writ procedures were applicable. *Reimann,* 214 Wis. 2d at 625–26.

¶ 96. The majority asserts that the history of Article VII, Section 5(3), and particularly the 1977 reorganization of the Wisconsin court system, "supports a construction that would imbue the court of appeals with jurisdiction to issue a supervisory writ to a judge presiding over a John Doe proceeding." Majority op., ¶ 30. The majority notes that prior to court reorganization, Article VII, § 8, vested the circuit courts with appellate jurisdiction over "all inferior courts and tribunals," which included John Doe judges. Majority op., ¶ 30, n.11. Court reorganization altered the language of Article VII, § 8 somewhat, deleting the reference to "inferior courts and tribunals" but retaining for the circuit courts "such appellate jurisdiction in the circuit as the legislature may prescribe by law." Majority op., ¶ 33, n.13.

¶ 97. Based on this history, the majority concludes that "[p]ursuant to the constitutional enactment, most of the appellate function previously exercised by the circuit courts was assigned to the newly created court of appeals." Majority op., ¶ 34. The majority does not identify which "constitutional enactment"—Article VII, § 5(3), Article VII, § 8, or some other provision—accomplished this purported "reassignment" of the circuit court's "appellate function." The majority cites no authority for this sweeping conclusion; the text of Article VII, §§ 5(3) and 8 certainly do not support it.

¶ 98. The majority has also concluded that a John Doe judge "must have the authority to disqualify coun-

705

sel, and may permit argument by counsel when necessary to ensure procedural fairness." Majority op., ¶ 55. These conclusions cannot be squared with long-standing caselaw; the latter rewrites the John Doe statute.

¶ 99. Adversarial motions which adjudicate the substantial rights of persons called before John Doe investigations—e.g., motions to compel, contempt motions, assertions of privilege and immunity grants—are heard and decided by the John Doe judge sitting as a court. *See Washington,* 83 Wis. 2d at 828–30 (compulsion/contempt); *Doe,* 78 Wis. 2d at 164 (same); *Newspapers,* 65 Wis. 2d at 72–73 (grant of immunity upon determination of self-incrimination privilege); *Jackson,* 18 Wis. 2d at 535–37 (same); *In re Subpoena Duces Tecum,* 113 Wis. 2d at 185 (motion to quash on assertion of self-incrimination privilege).

¶ 100. This court has held that while the John Doe statute "grants the John Doe judge power to issue subpoenas [ it does not specifically authorize the John Doe judge to force compliance with the subpoena or punish non-compliance." *Washington,* 83 Wis. 2d at 829 n.17. Such adversarial, adjudicative matters are outside the investigative scope of a John Doe, and, when they arise, are heard by the judge sitting as a court. This is because a John Doe judge's authority is limited by the purposes of the proceeding: a John Doe proceeding is investigative, not adversarial, and the John Doe judge's only adjudicative function is to determine probable cause. *Id.* at 821–22.

¶ 101. This court's most comprehensive statement of the role and authority of a John Doe judge is the following, from *Washington:*

> The [John Doe] statute confers upon the John Doe judge the power to determine the extent of the exami-

706

nation, as well as the power to determine whether the examination will be secret. The John Doe investigation is essentially limited to the subject matter of the complaint upon which the John Doe is commenced. The John Doe judge has no authority to ferret out crime wherever he or she thinks it might exist.

. . . .

By invoking the formal John Doe investigative proceeding, law enforcement officers are able to obtain the benefit of powers not otherwise available to them, *i.e.,* the power to subpoena witnesses, to take testimony under oath, and to compel the testimony of a reluctant witness. Although the judge's subpoena power is important to the prosecution and the judge has broad discretion in conducting the investigation, we reject [the defendant's] characterization of the judge as inevitably the 'chief investigator' or as an arm or tool of the prosecutor's office. We do not view the judge as orchestrating the investigation. The John Doe judge is a judicial officer who serves an essentially judicial function. The judge considers the testimony presented. It is the responsibility of the John Doe judge to utilize his or her training in constitutional and criminal law and in courtroom procedure in determining the need to subpoena witnesses requested by the district attorney, in presiding at the examination of witnesses, and in determining probable cause. It is the judge's responsibility to ensure procedural fairness. *State v. O'Connor,* 77 Wis. 2d 261, 284, 252 N.W.2d 671 (1977).

The John Doe judge should act with a view toward issuing a complaint or determining that no crime has occurred. To the extent that the judge exceeds this limitation, there is an abuse of discretion. *State ex rel. Jackson v. Coffey,* 18 Wis. 2d 529, 545, 118 N.W.2d 939 (1963).

707

*Washington,* 83 Wis. 2d at 822–24 (footnotes omitted). This articulation of the John Doe judge's role allowed the court in *Washington* to sustain the John Doe statute against a claim that it violated separation of powers by merging judicial and executive authority. *Id.* at 825–26.

¶ 102. The John Doe statute permits witnesses to have counsel present during the examination but provides that "counsel *shall not be allowed to* examine his or her client, cross-examine other witnesses or *argue before the judge."* Wis. Stat. § 968.26 (emphasis added). While this language relegates the attorney to a largely consultative rather than adversarial role (important, nonetheless, given the stakes), it also indicates a limitation on the scope and purpose of the John Doe and the authority of the John Doe judge.

¶ 103. Because an attorney may be present but may not examine witnesses or argue before the judge, the statute obviously does not contemplate that the John Doe judge, as a John Doe judge, would adjudicate motions affecting the rights of targets or witnesses, as this would necessarily require at least some semblance of adversarial process, such as the opportunity for counsel to be heard, which the statute otherwise prohibits.[5] A prosecutor's motion to disqualify counsel would qualify as an adversarial adjudicative matter,

---

[5] The John Doe judge here may have permitted argument by counsel for Unnamed Persons No. 1 and No. 2, even though the John Doe statute precludes it, because the briefs refer to counsel as having requested further information and an opportunity to seek conflict waivers. We have no record by which to confirm this, however, because of the John Doe secrecy order.

unless we are willing to say that a judge can legitimately disqualify an attorney based upon argument from a prosecutor alone.[6]

¶ 104. Thus the John Doe statute itself, and the cases cited above, require the John Doe judge to convene and act as a court in order to adjudicate an adversarial matter such as a motion to disqualify counsel during a John Doe investigation. This conclusion provides basic procedural fairness (the opportunity to be heard before important rights are adjudicated), and also creates a record for review, which is completely lacking here.

¶ 105. The majority notes that any review of the disqualification orders, had they not been withdrawn, "would be greatly hampered by the absence of any record for our review." Majority op., ¶ 56. This eloquently understates the problem. Review is not merely "greatly hampered" without a record; it is impossible. We have no idea why the John Doe judge disqualified the attorneys in this matter, other than a generic claim of conflict of interest stemming from previous representation of other witnesses. Here, the "no record" problem is theoretical only, because of the apparent mootness

---

[6] The commentary to SCR 20:1.7 regarding attorney conflicts of interest carries this caution regarding a conflict charged by an opposing party in a motion to disqualify counsel:

Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment.

709

brought about by the John Doe judge's withdrawal of the orders in question; in another case, the problem will be real.

¶ 106. The majority gets around the caselaw and the statutory language by simply rewriting the statute: "counsel shall not be allowed to argue before the judge" now reads "counsel may argue before the judge." However, argument of counsel, while now permitted under the majority's rewrite of the statute, may not be terribly meaningful. While the majority "remind[s] John Doe judges to be mindful that, when rendering judicial decisions in the context of a John Doe proceeding, they must create a record for possible review," the majority also "appreciate[s] that the John Doe judge could conclude that the terms of the secrecy order may preclude a disclosure of the factual basis for the disqualification orders to the petitioners and their counsel." Majority op., ¶ 57. If counsel is not told why the prosecutor and judge want him disqualified, how can he possibly "argue before the judge" on the matter, and how can he formulate and prosecute a credible supervisory writ action in the court of appeals?

¶ 107. It is interesting to note that during the same week that we heard oral argument in this matter, the John Doe judge took evidence and heard argument on the issue of whether the John Doe prosecutor ought to be disqualified on conflict of interest grounds. She did so not as a judge presiding over a John Doe tribunal, but as a circuit court in open session. She then issued an 11–page written decision captioned "State of Wisconsin, Circuit Court, Dane County, Branch 16," bearing the signature line "Circuit Court, Branch 16," finding no conflict of interest. The decision states that this procedure was followed "because the law is not settled in Wisconsin whether a John Doe judge has the power to

710 ⊕

make orders regarding a conflict of interest of attorneys appearing in the John Doe." Decision and Order, Dane County Circuit Court Case No. 01JD6, dated September 18, 2002. In any event, there is a court record and a court order.

¶ 108. Thus, when a John Doe judge adjudicates these sorts of motions as a court rather than a John Doe tribunal, then direct appellate or supervisory review in the court of appeals is available because the proceeding produces an order from a court, not a John Doe judge. This brings me full circle, back to the threshold jurisdictional question.

¶ 109. The constitution and the caselaw are clear that a John Doe judge's order may be reviewed by an original writ proceeding in the circuit court (which in turn is reviewable in the court of appeals), or by an original action in this court if the matter is publici juris and the court chooses to hear it, but not by the court of appeals in an original supervisory writ action. Wis. Const. art. VII, §§ 3, 8; *Swan,* 133 Wis. 2d at 95–97; *Heil,* 230 Wis. at 445–46. A motion to disqualify counsel in a John Doe investigation, just like a contempt motion, a motion to compel, or a claim of privilege and grant of immunity, must be heard by the judge sitting as a court rather than a John Doe tribunal. *Washington,* 83 Wis. 2d at 829 n.17; *Doe,* 78 Wis. 2d at 164; *Newspapers,* 65 Wis. 2d at 72–73; *Jackson,* 18 Wis. 2d at 535–37; *In re Subpoena Duces Tecum,* 113 Wis. 2d at 185. An order emanating from such a hearing may be reviewed by the court of appeals pursuant to its appellate or supervisory jurisdiction under Article VII, Section 5(3) of the constitution.

¶ 110. The majority opinion rewrites Article VII, Section 5(3) of the Wisconsin Constitution, as well as the John Doe statute; refuses to follow plainly appli-

711

cable precedents; and expands the authority of a John Doe judge beyond that which either the statute or the caselaw allow. I cannot join this opinion.