In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1790

THE JOHN K. MACIVER INSTITUTE FOR PUBLIC POLICY, INC.,

*Plaintiff-Appellant*,

*v.*

FRANCIS D. SCHMITZ, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:16-cv-539 — **William M. Conley**, *Judge*.

ARGUED NOVEMBER 8, 2017 — DECIDED MARCH 21, 2018

Before WOOD, *Chief Judge*, and FLAUM and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. This appeal requires us once again to delve into the intricacies of the Wisconsin "John Doe proceeding," a unique creature of Wisconsin law with some similarities to a grand jury investigation. A putative class of individuals and entities assert that they were swept up in a John Doe investigation that ran roughshod over their federal rights. They sued the members of Wisconsin's (former) Government

Accountability Board and the Milwaukee County District Attorney's Office, complaining about actions the defendants took between 2012 and 2014 in connection with a multi-county John Doe proceeding. The investigation had focused on suspected illegal campaign coordination between certain issue-advocacy groups and a candidate for elected office. Plaintiff, the John K. MacIver Institute for Public Policy ("MacIver"), is one of those advocacy groups. The defendants obtained search warrants from the state judge presiding over the John Doe proceeding for MacIver's electronic records; they then executed those warrants through internet service providers without giving notice to MacIver.

MacIver filed suit in the federal district court for the Western District of Wisconsin, alleging that the defendants' conduct violated the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2703(a)–(c), 2711(3). MacIver seeks damages, a preliminary injunction, and the return of its seized property. The district court dismissed the complaint and MacIver has appealed. Although the parties have briefed a wide variety of issues relating to the SCA and the John Doe process, we conclude that we need reach only one of them: the SCA's good-faith defense. We conclude that the defendants are entitled to this defense and thus affirm the judgment of the district court.

## I

### A

John Doe proceedings "have been in use in Wisconsin since its days as a territory." *State ex rel. Two Unnamed Petitioners v. Peterson*, 363 Wis. 2d 1, 67 (2015), *decision clarified on denial of reconsideration sub nom. State ex rel. Three Unnamed Petitioners v. Peterson*, 365 Wis. 2d 351 (2015). Noting that it is a

unique device now codified under Wisconsin Statute § 968.26, this court "ha[s] likened John Doe proceedings to grand jury investigations," except that they are conducted under the supervision of a judge, not the grand jury. See *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017). A John Doe proceeding "serves two important purposes." *Peterson*, 363 Wis. 2d at 67. It is both "an investigatory tool used to ascertain whether a crime has been committed" and a special procedure "designed to protect innocent citizens from frivolous and groundless prosecutions." *Id.* (quoting *State ex rel. Reimann v. Cir. Ct. for Dane Cnty.*, 214 Wis. 2d 605, 621 (1997)).

"John Doe proceedings are conducted through the authority of the presiding judge," *In re Doe Petition*, 310 Wis. 2d 342, 359 (2008), *opinion modified on denial of reconsideration sub nom. In re Doe*, 314 Wis. 2d 67 (2008), whose duty it is to determine, upon consideration of evidence collected during the proceeding, whether probable cause exists to issue a criminal complaint. See *State v. Washington*, 83 Wis. 2d 808, 821 (1978). A John Doe judge "serves an essentially judicial function." *Id.* at 823. Importantly, "[t]he John Doe judge does *not* act as 'chief investigator' or as a mere arm of the prosecutor. Rather, the John Doe judge serves as a check on the prosecutor and on the complainant to ensure that the subject(s) of the investigation receive(s) due process of law." *Peterson*, 363 Wis. 2d at 69 (citation omitted). At the conclusion of the proceeding, the judge determines whether probable cause exists; if it does, the judge may order a written criminal complaint. *Id*. at 68.

Although the rules have since changed significantly, at the time relevant to this case a judge overseeing a John Doe proceeding could subpoena witnesses, take testimony under oath, and, most relevant here, issue search warrants. Wis. Stat.

§ 968.26(2)(c) (2009), *amended by* 2015 Wis. Act 64 (eff. Oct. 25, 2015) (granting authority to subpoena witnesses and take testimony); *State v. Cummings*, 199 Wis. 2d 721, 733–35 (1996) (discussing authority to issue search warrants). Additionally, some or all of the proceeding could be conducted in secret, so that the subjects of the investigation would be unaware of it. Wis. Stat. § 968.26(3) (2009), *amended by* 2015 Wis. Act 64 (eff. Oct. 25, 2015).

B

MacIver is a Wisconsin-based conservative non-profit organization. As noted above, the defendants all worked either for the Wisconsin Government Accountability Board ("the Board"), an entity that now has been disbanded, or the Milwaukee County District Attorney. Francis Schmitz was a special investigator for the Board. Kevin Kennedy was the Board's Director and General Counsel, and Jonathan Becker served as Administrator of its Ethics and Accountability Division. Shane Falk was a Staff Attorney with the Board. John Chisholm was the Milwaukee County District Attorney. Bruce Landgraf and David Robles were Milwaukee County Assistant District Attorneys. Finally, Robert Stelter was an investigator for the Milwaukee County District Attorney's Office.

On August 10, 2012, Robles petitioned the Milwaukee County Circuit Court to commence a John Doe proceeding to investigate alleged campaign-finance violations. The petition, anticipating that sensitive documents would be sought and collected, requested a secrecy order. On August 23, the chief judge of the circuit court assigned and forwarded the John Doe petition to Reserve Circuit Court Judge Barbara Kluka.

On September 5, Judge Kluka was appointed by the Chief Justice of Wisconsin to preside over the John Doe proceeding in Milwaukee County, a step that was necessary because she was a reserve judge. Judge Kluka authorized the commencement of the proceeding and entered the requested secrecy order. In July and August of 2013, the investigation expanded into Columbia, Iowa, Dodge, and Dane counties, leading to the Chief Justice's appointment of Schmitz as special prosecutor for the entire investigation.

While presiding over the John Doe proceedings, Judge Kluka issued search warrants for electronic records of MacIver and other advocacy groups. MacIver alleges that in the end the investigators seized nearly five years' worth of its stored electronic communications. The secrecy orders had their intended effect: MacIver was not notified when the warrants were executed.

The recipients of the subpoenas, however, obviously knew that something was afoot. Some of them filed motions to quash their subpoenas in October 2013. Because of a conflict of interest (unspecified), Judge Kluka recused herself from the proceedings, which were reassigned to Judge Gregory Peterson. On January 10, 2014, Judge Peterson granted the motions to quash. He concluded that the targets had done nothing wrong, as Wisconsin law did not prohibit coordination between campaign committees and outside groups when the purpose of such coordination was to finance issue advocacy. Eventually this issue reached the Wisconsin Supreme Court, which upheld Judge Peterson's decision on July 16, 2015. The court ordered that the John Doe proceedings be closed and

that the defendants "return all property seized in the investigation … and permanently destroy all copies of information and other materials obtained through the investigation."

On December 2, 2015, the Wisconsin Supreme Court reformulated the portion of its ruling pertaining to the disposition of the seized materials. The modified order required Schmitz to retrieve all original documents relating to the John Doe proceeding and file them with the Clerk of the Wisconsin Supreme Court. All other copies had to be destroyed, but the copies on file with the Clerk would remain "in the event that the investigation would be allowed to proceed at some future date" or "for use in related civil proceedings … ." The court ordered that this file-and-destroy process be completed by November 2, 2016.

C

MacIver filed the present action on August 1, 2016, on behalf of a putative class of plaintiffs whose information was seized in the John Doe proceeding. MacIver alleges that the defendants "sought, obtained, and executed" search warrants for electronic communications without notice in violation of the SCA. Under MacIver's theory, the John Doe *proceeding* that issued the search warrants was not a "*court* of competent jurisdiction" under the SCA, thus making the lack of notice a statutory violation. In addition to damages, MacIver seeks declaratory relief and an injunction (1) prohibiting the defendants from obtaining any new records or disclosing the records they have, and (2) requiring the defendants to provide MacIver with copies of all seized records.

In fact, the defendants have represented to this court that they do not have custody of any of the documents. The Wisconsin Supreme Court has the originals under seal, and the district court has copies, also under seal and out of their control. The latter documents were delivered to the district court because the defendants had worried that the Wisconsin Supreme Court's file-and-destroy order would hamper their ability to defend themselves. The district court allowed the defendants to file copies of the documents under seal until further order or its closure of the case.

MacIver later moved for a preliminary injunction, asking for relief along the same lines of its requested permanent injunction. While MacIver's motion was pending, the defendants moved to dismiss. The district court granted the defendants' motions. It ruled that MacIver had failed to state a claim because the search warrants complied with the SCA, and in the alternative, that the defendants were protected by the SCA's good faith defense and qualified or prosecutorial immunity. The court denied MacIver's motion for a preliminary injunction and return of the seized materials. This appeal followed.

## II

This case turns on the interpretation of the SCA, which is contained within the Electronic Communications Privacy Act ("ECPA"). The ECPA has three titles, two of which are relevant to this appeal. Title I, often referred to as the "Wiretap Act," prohibits the unauthorized, nonconsensual interception of "wire, oral, or electronic communications" by government agencies and private parties. See 18 U.S.C. §§ 2510–22. Title II—the SCA—governs the privacy of stored internet communications. See *id.* §§ 2701–12.

A

The SCA places limits on both the government's ability to compel disclosure of electronic information and on internet service providers' ability voluntarily to disclose information to the government. The present litigation focuses solely on the compelled disclosure of electronic information. The SCA's provisions on this topic are complex, but for present purposes it is enough to say that a search warrant is required under certain circumstances, see *id.* § 2703, and that a warrant was necessary for the searches in our case.

The question is thus whether the challenged search warrants were valid for purposes of the SCA. To comply with the statute, a warrant must be issued "using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by *a court of competent jurisdiction*." See *id.* § 2703(a), (b)(1)(A) (emphasis added). The statute specifies what kind of court it has in mind, as follows:

> (3) the term "court of competent jurisdiction" includes—
>
>> (A) any district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that—
>>
>>> (i) has jurisdiction over the offense being investigated;
>>>
>>> (ii) is in or for a district in which the provider of a wire or electronic communication service is located or in which the wire or electronic communications, records, or other information are stored; or

>> (iii) is acting on a request for foreign assistance pursuant to section 3512 of this title; or

> (B) a court of general criminal jurisdiction of a State authorized by the law of that State to issue search warrants[.]

18 U.S.C. § 2711. MacIver alleges that the warrants issued in this case were not issued by a "court of competent jurisdiction," or even by a "court" at all, rendering the underlying searches unlawful by the terms of the SCA.

The SCA does not require perfection from the officials who implement it. Instead, it provides that "good faith reliance on … a court warrant or order … is a complete defense to any civil or criminal action brought under this chapter or any other law." *Id.* § 2707(e)(1). We have addressed section 2707(e) only once before, in *McCready v. eBay, Inc.*, 453 F.3d 882 (7th Cir. 2006). There we noted that "[g]ood faith reliance on a subpoena is a complete defense to actions brought under the ECPA and SCA." *Id.* at 892. We applied an objective test, noting that nothing in the subpoena at issue gave "any indication of irregularity sufficient to put [the defendant] on notice that the subpoena was 'phony.'" *Id.*

B

In order to decide whether the defendants were entitled to the good-faith defense under the SCA, we must dip a bit into the merits of each side's arguments. We first outline MacIver's position, and then that of the defendants. If the statute can be read objectively to support the actions the defendants took, then they are entitled to the defense, even if other readings are also possible.

1

MacIver opens with an important concession: it admits that the search warrants issued by Judge Kluka were valid as a matter of Wisconsin law. See *Cummings*, 199 Wis. 2d at 738 (holding that "a John Doe judge … enjoys those powers that are conferred to all judges by statute"); Wis. Stat. § 968.375 (2010), *amended by* 2013 Wis. Act 167 (eff. Mar. 29, 2014). MacIver must therefore show why state-law compliance is not good enough for the SCA.

In undertaking this task, it starts by looking back to the ECPA, the SCA's parent statute. The ECPA, MacIver says, distinguishes in a number of places between a "court" and a "judge." Title I of the ECPA (known as the Wiretap Act) authorizes a "State court *judge* of competent jurisdiction" to issue an order "authorizing or approving the interception of wire, oral, or electronic communications," 18 U.S.C. § 2516(2) (emphasis added). The Wiretap Act further defines a "Judge of competent jurisdiction" to include "a *judge* of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications." *Id.* § 2510(9)(b) (emphasis added). In contrast, in the SCA, which is Title II of the ECPA, the statute uses the term "court." The SCA thus empowers a "*court* of competent jurisdiction" to do certain things, 18 U.S.C. § 2703(a), (b)(1)(A) (emphasis added). MacIver deduces from the different choice of terms in the Wiretap Act and the SCA the conclusion that Congress meant to differentiate between "courts" and "judges."

This is a reasonable argument. "[I]t is a general principle of statutory construction that when 'Congress includes par-

ticular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (quoting *Russello v. United States,* 464 U.S. 16, 23 (1983)). As applied to our case, MacIver says this principle requires the conclusion that Congress has excluded for SCA purposes some warrants that are admittedly lawful under state law.

MacIver also points to some parts of Wisconsin law that buttress its position. The John Doe statute in effect at the time of the defendants' investigation also distinguished between a "judge" and a "court." For example, the statute dictated that a "judge" would convene an investigation and subpoena and examine witnesses, Wis. Stat. § 968.26(1) (2009), *amended by* 2015 Wis. Act 64 (eff. Oct. 25, 2015), and that the extent of such an examination was within the "judge's" discretion. *Id.* § 968.26(3). In contrast, only a "court" could compel a person to testify or produce evidence. *Id.* Wisconsin courts have also repeatedly noted this distinction. See, *e.g.*, *In re John Doe Proceeding*, 260 Wis. 2d 653, 685 n.15 (2003) ("A John Doe judge does not, however, enjoy the statutory powers of a court."); *State v. Washington*, 83 Wis. 2d 808, 828 (1978) ("A John Doe judge is not the equivalent of a court, and a John Doe proceeding is not a proceeding in a court of record."); *State v. Schober*, 167 Wis. 2d 371, 379–80 (Ct. App. 1992) (citations omitted) ("[T]he John Doe tribunal is not acting as a 'court,' but as a 'judge.' There is an express distinction between a judge and a court. An order issued by a judge in a John Doe proceeding is not a judgment or order of a circuit court."); *Gavcus v. Maroney*, 127 Wis. 2d 69, 70 (Ct. App. 1985) ("A [John Doe] proceeding is not a court proceeding.").

Finally, MacIver argues that the John Doe proceeding must be "a court of general criminal jurisdiction" to satisfy the SCA. See 18 U.S.C. § 2711(3)(B). We find it hard to equate a John Doe proceeding with either a court or a judge, but we take MacIver to mean that each John Doe proceeding must exercise general criminal jurisdiction for its warrants to comply with the SCA. If this is the requirement, it plainly is not met. Wisconsin strictly limits the scope of a John Doe proceeding "to the subject matter of the complaint upon which the John Doe is commenced." *Washington*, 83 Wis. 2d at 822. "The John Doe judge has no authority to ferret out crime wherever he or she thinks it might exist," but instead must "act with a view toward issuing a complaint or determining that no crime has occurred." *Id.* at 822–23. The Wisconsin courts deem this jurisdictional restraint "crucial to the fair administration of a John Doe proceeding," because "[w]ithout it, John Doe proceedings could easily devolve into judicially sanctioned general warrants." *Peterson*, 363 Wis. 2d at 72. Nonetheless, the fact that each John Doe proceeding does not exercise general criminal jurisdiction is not the end of the matter, because the definition of "court of competent jurisdiction" in section 2711(3)(B) uses the word "includes" before giving examples. 18 U.S.C. § 2711(3). The defendants argue that "includes" implies "'comprehends' or 'embraces,'" *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 125 (1934), thus making the list of "competent" courts provided in section 2711(3) illustrative rather than exhaustive. See *In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996). But "the term 'includes' may sometimes be taken as synonymous with 'means,'" *Helvering*, 293 U.S. at 125. Perhaps this is enough to render section 2711 amenable to a reading under which the SCA requires a warrant to be issued by a "court of general criminal jurisdiction," not by a judge acting

within her authority to conduct an ancillary proceeding such as the John Doe investigation.

2

While MacIver's arguments therefore must be taken seriously, so must those of the defendants, who offer a tenable response to MacIver's position. Defendants contend that the SCA does not contemplate a hard distinction between "judge" and "court." Instead, it requires only a search warrant that is valid under state law. Comparisons to the Wiretap Act, they argue, are misplaced. First, the Wiretap Act calls for "a 'super' search warrant rather than the usual warrant required by the SCA." Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1232 (2004). It uses the term "judge of competent jurisdiction" as part of a statutory scheme that includes extensive descriptions of additional findings necessary to support a wiretap warrant. 18 U.S.C. § 2518. The defendants also point out that in the case of federal courts, the term "court of competent jurisdiction" is defined to include "a magistrate judge of such a court." 18 U.S.C. § 2711(3)(A). Viewed in this light, they say, the phrase "court of competent jurisdiction" is a simple shorthand to ensure that warrants are issued through a judicial proceeding that is itself valid under state law, not through some *ad hoc* administrative process.

From this perspective, they continue, it just confuses the analysis to say that a John Doe *judge* is not a *court*. Of course not—judges often exercise the power of the court (especially at the trial level, where only one judge sits), but that does not mean that they are themselves a court. (We are long past the era of "l'État c'est Moi.") Courts in the abstract do not issue warrants; the judges presiding over the particular criminal

cases do so. In the federal system, Federal Rule of Criminal Procedure 41(b) authorizes a magistrate judge or a judge of a state court of record to issue search warrants. As noted above, no one disputes that Wisconsin law authorized Judge Kluka to issue the warrants at issue here. Wis. Stat. § 968.375(4) (2010), *amended by* 2013 Wis. Act 167 (eff. Mar. 29, 2014) ("a judge may issue a warrant requiring a person who provides electronic communication service or remote computing service to disclose within a reasonable time that is established in the warrant any of the following [items]"). In both the state systems and the federal system, there is a distinction between the investigatory phase of a proceeding and the adjudicative phase. Federal grand juries, for example, are convened only when "the court" so orders, and they operate under the supervision of the district court. See FED. R. CRIM. P. 6. Yet no one would say that the district court judge assigned to the case cannot, for instance, rule on a motion to disclose certain grand jury materials under Rule 6(e)(3)(E) because the judge somehow is not "the court."

Viewed through this lens, all Congress was doing in the SCA (a different statute, enacted at a different time from the Wiretap Act) was recognizing that the judge exercising the power of the court must be authorized by state law to wield that particular power. Rather than delve into the law of all 50 states, Congress used the short-hand term "court of competent jurisdiction." The fact that the Wiretap Act uses the word "judge" does not mean that state courts for SCA purposes have an extra burden to show why a given "judge" is acting for a particular "court." In fact, Wisconsin has provided an assurance that the John Doe judges are doing exactly that. It did so when it amended the statute after the decision in *State ex rel. Jackson v. Coffey*, 18 Wis. 2d 529 (1963), to eliminate the

possibility that John Doe powers would be exercised by a magistrate. *Id.* at 534–35. See also *State ex rel. Newspapers, Inc. v. Cir. Ct. for Milwaukee Cnty.*, 65 Wis. 2d 66, 70–71 (1974) (recognizing the amendment). Although it is true that a John Doe judge does not exercise *all* powers of the court, nothing in the SCA says that this is necessary. The key question is whether state law confers on the John Doe judge the power to issue search warrants. As MacIver concedes, the answer to that question is yes.

The defendants also push back against MacIver's accusation that the John Doe judge is some sort of free-floating agent unconstrained by any external authority. That is not the case. The John Doe judge here was appointed by the chief judge of the Milwaukee County Circuit Court (with the concurrence of the state's chief justice). The Wisconsin Supreme Court held in *In re John Doe Proceeding* that the John Doe judge's decisions are "subject to review pursuant to a petition for a supervisory writ," 260 Wis. 2d at 680, even though they cannot be reviewed on direct appeal. This parallels the way in which one would obtain review of a matter arising before a grand jury. Typically such an issue would not qualify for a direct appeal, but in extraordinary circumstances a writ of mandamus would be proper. See *United States v. Sinovel Wind Grp. Co., Ltd.*, 794 F.3d 787, 790–94 (7th Cir. 2015). The John Doe judge is appointed to exercise the powers of the circuit court that asked for the appointment. At the time, the statute did not prohibit "reserve" judges from serving as a John Doe judge, and so the fact that Judges Kluka and Peterson may have had that status is immaterial. Just as senior judges in the federal system exercise all powers of a judge of their court, reserve judges in Wisconsin are entitled either to perform specified duties, Wis. Stat. § 753.075(1)(b), or, if they have "permanent"

reserve status, the "same duties as other judges." *Id.*
§ 753.075(1)(a). Issuing a warrant is one of those powers. And
a John Doe judge's power to issue a search warrant flows not
from her appointment as a John Doe judge or from Wis. Stat.
§ 968.26, which at the time made no mention of search war-
rants, but from "those powers that are conferred to all judges
by statute." *State v. Cummings*, 199 Wis. 2d at 738.

The defendants end with the observation that the John
Doe statute in effect at the time of the investigation of Mac-
Iver's activities authorized the Chief Justice of Wisconsin to
confer the power to supervise the investigation on any state-
court judge authorized to sit on a Wisconsin Circuit Court.
The Chief Justice exercised that power when she authorized
first Judge Kluka and then Judge Peterson to oversee the John
Doe investigation. Pursuant to those authorizations, they
were acting in their official capacity as judges of the Milwau-
kee County Circuit Court. Thus, the defendants conclude, the
judges' actions fell within the scope contemplated by the SCA.
Naturally the judges *personally* were not "court[s] of general
criminal jurisdiction," but they were authorized to, and did,
exercise the powers of such a court.

As this brief discussion shows, both positions have some
merit. That is the backdrop against which we must assess the
availability of the statutory good-faith defense, to which we
now turn.

### III

MacIver begins with a procedural challenge to the de-
fense: it urges that it is improper to consider an affirmative
defense at the pleading stage. That is often true. Generally,
"[a]ffirmative defenses do not justify dismissal under Rule

12(b)(6)." *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). Nevertheless, a plaintiff may "plead[] itself out of court" by "admit[ting] all the ingredients of an impenetrable defense" in a complaint. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Here, MacIver's Amended Complaint explicitly states that it "does not challenge the basis or even the scope" of the underlying John Doe proceeding, including the search warrants issued by Judge Kluka. MacIver asserts only that such warrants were improperly executed without notice to MacIver because a John Doe proceeding is not a "court of competent jurisdiction" under the SCA. Because MacIver's challenge rests purely on legal interpretation, we may resolve the good-faith defense at the motion-to-dismiss stage, as we have done before. See *McCready*, 453 F.3d at 891–92.

It cannot be the case that the good-faith defense is available only to those defendants who can show that they are entitled to judgment on the merits. The whole idea of such a defense rests on the idea that the investigating agents might make a mistake, but that they should not be liable if they can show that they proceeded in good faith. The same thinking lies behind the Supreme Court's decision in *United States v. Leon*, 468 U.S. 897 (1984), in which the Court held that the Fourth Amendment's exclusionary rule should not be applied to bar evidence obtained in good faith by officers acting in reasonable reliance on a warrant. The Court used an objective standard of reasonableness, *id.* at 922–23, and we think that the same approach is proper here.

From that perspective, we conclude that the defendants behaved in an objectively reasonable manner when they followed the prescribed procedures of the John Doe proceeding,

sought warrants from state circuit judges who had been duly appointed to preside over the proceeding, and conducted their investigation into possible violations of the state's election laws. The fact that the legal ground shifted under them during a period of considerable upheaval in election law, see *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434 (2014) (invalidating statutory aggregate limits on how much money a donor may contribute to political candidates), and *Wisconsin Right To Life, Inc. v. Barland*, 751 F.3d 804 (7th Cir. 2014) (striking down state laws that banned corporations from making certain contributions and addressing independent political messages), is neither here nor there. The prosecutors had no way of predicting these changes in state law and cannot be found to have been acting in bad faith because the legal landscape later changed. We note as well that the system ultimately vindicated MacIver's position: Judge Peterson quashed the subpoenas, the Wisconsin Supreme Court affirmed him, and the investigation was shut down. Prosecutors should not be vulnerable to lawsuits every time they lose in court.

## IV

In addition to raising their statutory good-faith defense, the defendants have argued that they are entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because of the "dearth of case law interpreting the SCA's 'court of competent jurisdiction' language," the district

court thought that qualified immunity was also available for them. There is no serious dispute that MacIver's interpretation of the SCA was not "clearly established" at the time defendants' warrants were issued.

MacIver responds that as a matter of law, qualified immunity does not apply to statutory claims arising from the SCA. That is not, however, the direction in which our decisions have gone in cases under the Wiretap Act. We have consistently recognized qualified immunity for alleged Wiretap Act violations. See *Narducci v. Moore*, 572 F.3d 313, 323 (7th Cir. 2009); *Davis v. Zirkelbach,* 149 F.3d 614, 618 (7th Cir. 1998). The Sixth and Eleventh Circuits agree. See *Blake v. Wright*, 179 F.3d 1003, 1012 (6th Cir. 1999); *Tapley v. Collins*, 211 F.3d 1210, 1216 (11th Cir. 2000). MacIver relies heavily upon the D.C. Circuit's decision in *Berry v. Funk*, 146 F.3d 1003 (D.C. Cir. 1998), which went the other way and held that qualified immunity did not apply to the Wiretap Act. *Id.* at 1013–14. We see no persuasive reason, however, to distinguish the SCA from the Wiretap Act or to depart from circuit precedent. To the extent it makes any difference (and that is unclear), we hold that qualified immunity is available to SCA defendants in general, and these defendants in particular.

## V

Finally, we turn to two residual issues: MacIver's request for injunctive relief and its motion under Federal Rule of Criminal Procedure 41(g). MacIver seeks two kinds of equitable relief: (1) an injunction barring the defendants from seizing records in the future or publicly disclosing records they have obtained, and (2) an order requiring the defendants confidentially to provide MacIver (and putative class members)

with copies of seized materials. Neither of these requests has any merit at this point.

As to MacIver's first request for an injunction to prevent future searches and seizures, "[w]e cannot reach the merits of [MacIver's] claim for prospective relief if 'the possibility of any future injury [is] too remote.'" *Capeheart v. Terrell*, 695 F.3d 681, 684 (7th Cir. 2012) (second alteration in original) (quoting *Piggee v. Carl Sandburg College,* 464 F.3d 667, 673 (7th Cir. 2006)). Although MacIver's Amended Complaint is replete with allegations of past wrongs, it fails to allege a "real and immediate threat" of future prosecution and seizures sufficient to issue injunctive relief. See *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Indeed, it does the opposite, insofar as it acknowledges that (1) the Board was dissolved; (2) the John Doe proceedings relevant to this lawsuit were closed; (3) the Wisconsin Supreme Court repudiated the legal theory underlying defendants' investigation; and (4) the John Doe statute was amended.

Our previous decision in *O'Keefe v. Chisholm*, 769 F.3d 936 (7th Cir. 2014), resolves MacIver's second request, for production of the materials seized in the past. "The state court entered a comprehensive order regulating disclosure of documents in the John Doe proceeding. … Wisconsin's judiciary must decide whether particular documents gathered in the investigation should be disclosed." *Id.* at 943. There is no basis to enjoin the defendants when the Wisconsin Supreme Court has already ordered exactly what they want.

The district court denied MacIver's effort to obtain the return of its property using Federal Rule of Criminal Procedure 41(g). Recall that the district court permitted the defendants to file copies of electronic materials obtained by John Doe

search warrants with the Clerk of the Western District of Wisconsin, and that those copies are under seal and unavailable to anyone without the court's permission. We approved a similar arrangement in *Archer v. Chisholm*, 870 F.3d 603, 621 (7th Cir. 2017). Rule 41(g) motions are independent equitable actions, at least for evidence seized by federal officials, see *United States v. Sims*, 376 F.3d 705, 707–08 (7th Cir. 2004), but it is not the proper tool here. The Wisconsin Supreme Court controls these materials. If MacIver would like copies of its documents, it must take its request to the Wisconsin Supreme Court.

\* \* \*

Because all defendants are entitled to the SCA's good-faith defense and qualified immunity, we AFFIRM the judgment of the district court.