NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 21, 2018[*]
Decided May 21, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-2753

| | |
|---|---|
| BILLY CANNON, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 16-cv10-pp |
| DEAN NEWPORT, *Defendant-Appellee.* | Pamela Pepper, *Judge.* |

## O R D E R

This appeal arises out of a search of the prison cell of Wisconsin prisoner Billy Cannon. Cannon believes that the search was initiated unlawfully by a Milwaukee police officer, Dean Newport, in retaliation for Cannon's petitioning to have a "John Doe investigation" (a unique Wisconsin procedure that resembles a grand jury investigation) opened against Newport to expose his wrongdoing. The district judge entered summary judgment in favor of Newport, concluding that there was no evidence

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

the officer knew about the petition before seeking the cell search. We affirm the judgment.

As Cannon alleged in his federal complaint, Newport asked prison officials to search his prison cell after finding out that Cannon had named him in a petition seeking a "John Doe investigation." Such proceedings, which are supervised by a judge, are used to determine whether a crime has been committed. *See* WIS. STAT. § 968.26; *John K. Maciver Inst. for Pub. Policy, Inc. v. Schmitz*, 885 F.3d 1004, 1007–08 (7th Cir. 2018). In his John Doe petition, Cannon, who at the time was serving a prison sentence and awaiting trial on another criminal case, had asserted that Newport and other law-enforcement officials conspired to "frame" him for crimes that led to both the sentence he was serving at the time and his pending charges. Several weeks after filing this petition, Cannon alleged, his prison cell was searched and legal documents from his cell were seized by prison officials.

At the screening stage, *see* 28 U.S.C. § 1915A, the district judge dismissed several of Cannon's claims for failure to state a claim, including that Cannon's cell was searched and his documents seized in violation of the Fourth Amendment. The judge concluded that Cannon did not have a reasonable expectation of privacy in his prison cell. But the judge allowed Cannon to proceed on a claim that Newport violated the First Amendment by retaliating against him for engaging in free speech, namely, filing a John Doe petition.

Both sides moved for summary judgment, and a fuller picture emerged of the events leading up to the search of Cannon's cell. (We review these facts de novo and draw all inferences in Cannon's favor, *see Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018)). In addition to his John Doe petition against Newport and other law-enforcement agents, Cannon had filed an unrelated John Doe petition to investigate wrongdoing by the state trial judge who presided over both of his criminal cases, Judge Michael Guolee. In that petition, Cannon alleged that Judge Guolee had sentenced him to prison out of jealousy because the judge's clerk, Tammy Baldwin, had been having an affair with both the judge and Cannon during Cannon's prosecution.

Judge Guolee's alleged bias also was the subject of a motion to vacate the prison sentence Cannon was serving. In the motion, Cannon reiterated that his sentence stemmed from Judge Guolee's jealousy over his relationship with Baldwin. Cannon attached to his motion love letters that Baldwin sent to him in prison, ostensibly to prove the existence of his relationship with Baldwin.

The contents of Cannon's motion to vacate—and particularly the accompanying love letters from Baldwin that contained references to Cannon's criminal cases—caught the attention of various county offices, including the Milwaukee County District Attorney's Office. That office began investigating whether Baldwin had inappropriately passed confidential information to Cannon during their relationship. An investigator from the District Attorney's Office contacted Newport to assist that effort.

Less than a month after Cannon filed his motion to vacate, Newport contacted the prison's security director to request a search of Cannon's prison cell to determine if Cannon possessed any sealed documents that might have come from Baldwin. When Newport eventually reviewed the seized documents, he found copies of the same love letters from Baldwin that had sparked the investigation, but nothing else noteworthy.

Newport asserted in a declaration that he sought to search Cannon's cell solely on the basis of Baldwin's letters and the allegations in Cannon's motion to vacate, and not on the basis of the John Doe petition filed against him. Newport denied knowing anything of the John Doe proceedings, which, unlike Cannon's motion to vacate, were not a matter of public record.

The district judge entered summary judgment for Newport, concluding that Cannon had produced no evidence that his request for a John Doe investigation induced Newport to order a search of his cell. Cannon, the court said, provided no evidence to show "what the defendant knew or when he knew it," and Cannon's "unsupported opinions and beliefs" about Newport's retaliatory intent were insufficient to create a fact question. Further, the judge rejected Cannon's request to reinstate his Fourth Amendment claim in light of *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), in which the Court held that the Fourth Amendment provides a cause of action for unreasonable seizure of a pretrial detainee. The judge determined that Cannon was a convicted prisoner rather than a pretrial detainee at the time his cell was searched, so *Manuel* did not apply.

On appeal Cannon maintains generally that Newport was aware of the John Doe petition filed against him, and that the petition motivated him to retaliate by searching Cannon's cell and seizing documents. In support, Cannon identifies what he regards as "circumstantial evidence" of Newport's retaliatory intent that the district judge overlooked. For example, Cannon highlights what he describes as Newport's deceptive misuse of federal-government stationery in correspondence thanking the prison's security director for his assistance in the search of Cannon's cell. Despite being a Milwaukee police officer, Newport—according to Cannon—lied about his position by

writing the security director on stationery bearing official letterhead for the Bureau of Alcohol, Tobacco, and Firearms. And if Newport was willing to lie about his own official position, Cannon posits, he must also be lying about his motives for searching Cannon's prison cell. But Cannon's argument is directly refuted by Newport's declaration, in which he explained that he was authorized to use the letterhead as a deputized ATF agent. Cannon offers only his own speculation to rebut Newport's declaration, and speculation is not enough to raise an inference of a retaliatory motive. *Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017).

Next, Cannon takes issue with the district judge's dismissal of some of his claims at screening (he does not specify which claims) and contends that the judge should have allowed him to reassert them. At least, he seems to believe that he stated a Fourth Amendment claim of an unreasonable search and seizure. But as the district judge correctly observed, a convicted prisoner (as Cannon was at the time) has no reasonable expectation of privacy in his cell. *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984); *see also King v. McCarty*, 781 F.3d 889, 899 (7th Cir. 2015). Cannon argues that the Supreme Court's decision in *Manuel* alters this rule, but *Manuel* applies only to pretrial detainees and does not address searches or seizures of property. *See* 137 S. Ct. 918–20. Cannon also argues that he had an expectation of privacy as to searches conducted for investigative purposes rather than for institutional-security reasons, but we have never drawn such a distinction, and at least one court has specifically disavowed it. *See Willis v. Artuz*, 301 F.3d 65, 68–69 (2d Cir. 2002).

Cannon's additional arguments are frivolous and merit no further discussion.

AFFIRMED